**AMARILLO OIL CO. et al. v. McBRIDE et al.**

**No. 4128.**

Court of Civil Appeals of Texas. Amarillo.

Jan. 22, 1934.

Rehearing Denied Feb. 12, 1934.

Madden, Adkins, Pipkin & Keffer, of Amarillo, for appellants.

Stone & Guleke and Trulove & Frazee, all of Amarillo, for appellees.

JACKSON, Justice.

Teant L. McBride, joined by his wife, Annie V., as grantors, on May 17, 1920, executed a deed by which the grantees named therein each acquired an interest in a section of land.

The deed stipulates:

"That I, Teant L. McBride, joined pro forma by my wife Annie V. McBride, of the County of Potter and State of Texas, for and in consideration of the love and affection I bear my father Dave N. McBride and my brothers and sisters, to-wit: (naming them) have given, granted and conveyed and by these presents do give, grant and convey unto my said father Dave N. McBride * * * my brothers Robert G. McBride * * * Amos P. McBride * * * and my sisters Jennie M. Wright, wife of Bert B. Wright * * * and Montie G. Rockwell, wife of Marshall H. Rockwell * * * upon the terms and conditions hereinafter set out:

"All that certain tract of land situated in Potter County, Texas, known and described as

Section No. 98 in Block No. 46 of the Houston & Texas Central Ry. Co. land * * * containing 640 acres more or less."

Then follows a regular habendum clause and a special warranty clause from which is omitted the name of Dave N. McBride, after which is this provision:

"The intention and purpose of this conveyance is to vest sufficient title in my said father, Dave N. McBride, to the above described property, so that he can, during his life, use, occupy and enjoy it, and receive therefrom all the benefits as completely as though he had a fee simple title; and to that end he may execute and deliver oil and gas, or other mineral leases to all or any part thereof; provided such leasehold estates so conveyed shall not convey to the lessee more than seven-eighths of such oil, gas or other minerals discovered on or under the surface of such premises, always reserving the other one-eighth of such oil, gas or mineral products to himself and his assigns. And if oil, gas or other valuable minerals be discovered on or under said land, then and in such case the leasehold estate shall remain in the lessee, his heirs and assigns for such term and upon such conditions and requirements of the lessee after the death of my said father Dave N. McBride, as if he were living, except that the rents and royalties therefrom shall be payable to my said above named brothers and sisters, as their respective interest may appear. And such reservation of one-eighth interest in such oil, gas and other minerals, so contained in the lease contracts of my said father, may be transferred by him for and during his life time only, after his death such reservation rights shall vest in my said named brothers and sisters aforesaid, as applied to their respective parts of said land as hereinafter set forth. And at the death of my said father, Dave N. McBride, my said brothers and sisters shall have and become the owners in fee simple of said tract of land in the following parts and parcels,"

It is then stipulated that Robert G. McBride shall own in his own separate right in fee simple the N. E. ¼; Amos P. McBride shall own in his own separate right in fee simple the S. W. ¼; Jennie M. Wright shall own in her own separate right in fee simple the N. W. ¼; and Montie G. Rockwell shall own in her own separate right in fee simple the S. E. ¼ of said section.

On February 10, 1926, Dave N. McBride, by his attorney in fact, leased and let the oil, gas, and mineral rights on the south 600 acres of said section to the Amarillo Oil Company for a consideration of $6,000 cash and an annual rental of $600. The lease is on a regular 88 form, and contains the following provisions:

"It is agreed that this lease shall remain in force for a term of five years from this date, and as long thereafter as oil or gas, or either of them, is produced from said land by the lessee.'

"In consideration of the premises the said lessee covenants and agrees:

"1st. To deliver to the credit of lessor, free of cost, in the pipe line to which he may connect his wells, the equal of one-eighth part of all oil produced and saved from the leased premises.

"2nd. To pay the lessor one-eighth royalty for the gas from each well where gas only is found, while the same is being used off the premises, and lessor to have gas free of cost from any such well for all stoves and all inside lights in the principal dwelling house on said land during the same time by making his own connections with the wells at his own risk and expense.

"3rd. To pay lessor for gas produced from any oil well and used off the premises at the rate of one-eighth royalty for the time during which gas shall be used.

"If no well be commenced on the said land on or before the 10th day of February, 1927, this lease shall terminate as to both parties, unless the lessee on or before that date shall pay or tender to the lessor or to the lessor's credit in the American State Bank at Amarillo, Texas, or its successors, which shall continue as a depository regardless of changes in ownership of said land, the sum of six hundred ($600.00) Dollars, which shall operate as a rental and cover the privilege of deferring the commencement of a well for 12 months from said date. In like manner and upon like payment or tenders the commencement of a well may be further deferred for a like period for the same number of months successively. And it is understood and agreed that the consideration first recited herein, the down payment, covers not only the privileges granted to the date when said first rental is payable as aforesaid, but also the lessee's option of extending that period aforesaid, and any and all other rights conferred.

"Should the first well drilled on the above described land be a dry hole, then and in that event, if a second well is not commenced on said land within twelve months from the expiration of the last rental period for which rental has been paid, this lease shall terminate as to both parties unless the lessee on or

before the expiration of said twelve months shall resume the payment of rentals in the same amount and in the same manner as hereinabove provided. And it is agreed that upon the resumption of the payment of rentals, as above provided, that the last preceeding paragraph hereof governing the payment of rentals and the effect thereof, shall continue in force just as though there had been no interruption in the rental payments."

The parties agreed that the Amarillo Oil Company had by assignment conveyed to the Canadian River Gas Company the gas rights and to the Parconis Oil & Gas Company the oil rights on said 600 acres of land described in the lease, and that the Equitable Trust Company of New York had a mortgage on the seven-eighths of the oil and gas conveyed to the Amarillo Oil Company in the original lease. The consideration of $6,000 was paid to Dave N. McBride, and the annual delay rentals of $600 were paid to him according to the terms of the lease until his death. He died on June 25, 1928, prior to the drilling of a well on any of the acreage covered by the lease. After his death, appellees requested and received annual rentals on February 10, 1929, and February 10, 1930, "for their undivided interest." On July 8, 1930, the Canadian River Gas Company commenced, and on November 4, 1930, completed at an approximate cost of $30,000, a gas well on the S. E. ¼ of the section, which produced about 45,000,000 cubic feet of gas per day. The gas was and has been continually marketed since the completion of the well and the royalties due therefrom paid to Montie G. Rockwell.

The appellees Amos P. McBride, Robert G. McBride, and Jennie M. Wright, joined by her husband, instituted this suit in trespass to try title in the district court of Potter county, Tex., against the appellants, the Amarillo Oil Company, the Canadian River Gas Company, the Parconis Oil & Gas Company, and the Equitable Trust Company of New York, to recover the N. E. ¼, the S. W. ¼, and the N. W. ¼ of said section. In addition to the count in trespass to try title, appellees sought to cancel the lease and remove the cloud from the title of their respective tracts, alleging that the deed from Teant L. McBride and his wife conveyed to Dave N. McBride a life estate only and the lease was terminated by his death on June 25, 1928, but, if this contention was not sustained, then in any event it ended on February 10, 1931, the day on which the primary period of the lease expired, because neither the lessee nor its assigns had drilled any well on any tract owned by either of appellees.

The appellants answered by general denial and pleaded that Dave N. McBride had the right to execute an oil and gas lease valid beyond the date of his death, that the lease was so construed by the parties, and appellants had complied with all the terms and conditions of the lease.

In a supplemental petition the appellees alleged that appellants had refused to pay them any royalties, rentals, or compensation since the gas well was completed, but such royalties were paid to Montie G. Rockwell, which was a practical construction of the contract by appellants recognizing her as the exclusive owner of such royalty and repudiating the lease so far as it affected the three-quarters of the section belonging to appellees.

The case was tried before the court without the intervention of a jury, and on April 14, 1933, judgment was rendered canceling the oil and gas lease on the three tracts owned by appellees and removing all cloud from their respective titles, from which judgment this appeal is prosecuted.

"It is no longer doubted that oil and gas within the ground are minerals. * * * In place, they * * * are a part of the realty." Texas Co. v. Daugherty, 107 Tex. 226, 176 S. W. 717, 719, L. R. A. 1917F, 989.

■ The general rule is that the holder of a life estate in land has no right to open new mines and remove mineral therefrom "when the land has not been devoted to mining purposes before the creation of his estate" and the same rule controls the drilling of new wells and extracting oil or gas from the land by or for the benefit of a life tenant. Swayne et al. v. Lone Acre Oil Co., 98 Tex. 597, 86 S. W. 740, 69 L. R. A. 986, 8 Ann. Cas. 1117; 1 Thornton's Law of Oil & Gas (4th Ed.) p. 759.

■■ If, as appellees contend, the deed from Teant L. McBride and his wife to Dave N. McBride conveyed only a life estate in the oil, gas, and other minerals, the lease was unauthorized, and appellants required no rights by virtue thereof, because the land had not, prior to the creation of such life estate, been devoted to the production of oil or gas. The courts, however, recognize several exceptions to this general rule, and announce that under certain circumstances a mine may be opened or well drilled for oil or gas for the benefit of the life tenant. These exceptions "arise by reason of some act of the original owner." 1 Thornton's Law of Oil & Gas (4th Ed.) p. 763. The power and right to open mines or drill wells by the life tenant after the inception of his estate may be conferred by the instrument

conveying to him such estate. 36 L. R. A. (N. S.) annotations, p. 1106; 43 A. L. R. annotations, p. 814; 77 A. L. R. annotations, p. 781. The deed from Teant L. McBride and his wife conferred on Dave N. McBride, his father, the power and authority to drill or have drilled on the land wells for oil or gas. Minerals in place may be severed from the residue of the soil by a proper conveyance and the original land divided into horizontal parts or parcels as effectively as it may be divided into vertical tracts by superficial lines or perpendicular planes, and "where it is the intention of the parties to a conveyance of land to separate the title in fee to the minerals in place from the title in fee to the remainder of the land, effect will be given to this intention." Humphreys-Mexia Co. v. Gammon, 113 Tex. 247, 254 S. W. 296, 302, 29 A. L. R. 607.

"Title to the surface may rest in one person and title to the strata beneath the surface containing such minerals in another." Texas Co. v. Daugherty, supra.

Judge Sharp of the Commission of Appeals says:

"The authoritative decisions of this state establish the following elementary rules, to wit:

"1. That oil and gas in place are part of the realty and are susceptible of ownership and may be conveyed as any other interest in realty by appropriate conveyance, and that the ordinary form of oil lease in general use is in effect a sale of the portion of the land.

"2. That a severance of minerals may be made by an exception or reservation in the deed conveying the land.

"3. When a severance of the minerals is accomplished, each estate, that is, the minerals in place and that in the remainder of the land, may be a freehold, or an estate in fee simple." Lemar v. Garner, 121 Tex. 502, 50 S.W.(2d) 769, 772, and authorities cited.

■ It may be conceded that the deed to Dave N. McBride conveyed to him an estate for life only in the surface rights of the section and at his death such surface rights vested in the brothers and sisters as the deed provided a specific one-fourth of the section in each. The deed, however, empowered Dave N. McBride to "execute and deliver" oil and gas leases "to all or any part" of the land, but "such leasehold estate so conveyed" was not to exceed "seven-eighths of such oil and gas * * * on or under the surface," the other one-eighth to be reserved to Dave N. McBride and his assigns. If oil or gas was discovered, the leasehold estate conveyed by the lease was to "remain in the lessee, his heirs and assigns," after the death of Dave N. McBride, "as if he were living," provided the terms, conditions, and requirements of the lease were complied with, but the rents and royalties after his decease were payable to the brothers and sisters "as their respective interest may appear" and the one-eighth reserved was to vest in them as "applied to their respective parts of said land."

If this deed did not sever the surface rights from the mineral rights, it gave Dave N. McBride authority to make such severance, and pursuant thereto he leased the south 600 acres of the section to the Amarillo Oil Company as one leasehold. The lease was for a primary period of five years and so long thereafter as oil or gas was produced from the land. The annual rentals were paid as they matured, and before the termination of the primary period gas was produced on the land covered by the lease.

The trial court held, in effect, that the language of the deed providing that the leasehold estate should remain in the lessee after the death of Dave N. McBride as if he were still living continued the rights of appellants in the leasehold estate after the death of Dave N. McBride. This holding is not challenged, and is correct, and, in our opinion, the same language extends the lease beyond the date of the expiration of the primary period, if the terms of the lease requiring the production of oil or gas on the 600 acres were complied with by the lessee or its assigns. Gas was produced on the 600 acres and the provisions of the lease complied with and appellees' contention that in order to extend the lease beyond the primary period a well was required on each of their respective tracts is not tenable.

■ The provisions of the deed authorizing Dave N. McBride to lease the section in whole or in part and stipulating that the leasehold estate so conveyed should remain in the lessee after the death of Dave N. McBride as though he were living are not ambiguous, and, if any construction was placed on these provisions by the parties contrary to the plain import of the language, such construction was immaterial. Shropshire v. Commerce Farm Credit, Co., 120 Tex. 400, 30 S.W.(2d) 282, 39 S.W.(2d) 11, 84 A. L. R. 1269.

No demand was ever made and no claim is here made by appellees for any part of the royalties paid from the gas produced and marketed. Whether the appellees are entitled to an undivided interest in the royalties accruing from the oil, gas, or other minerals produced on the entire lease, or whether each is

entitled to the royalties accruing from production on his respective tract, or whether the provisions of the deed relative thereto are ambiguous, is not before us for determination.

The judgment is reversed, and the cause remanded.