NOBLE HOLT ET AL V. BASCOM GILES, COMMISSIONER
OF THE GENERAL LAND OFFICE ET AL.

No. A-2987. Decided May 16, 1951.
Rehearing overruled July 25, 1951.
(240 S. W., 2d Series, 991.)

*H. A. Leaverton,* of Seminole, for relator.

The grantee in a general warranty deed, wherein the land conveyed was public school land of the State and was sold by the State with a reservation of all the minerals to the State, and in which deed there was a reservation by and in favor of the grantor for a period of 99 years of the exclusive right of use of said land for grazing and farming purposes, is the owner of the soil as that term is used in the Relinquishment Act, and the owner of an undivided interest in the minerals in said land is the agent of the State for the making of oil and gas leases without the joinder of the owners of the remaining undivided interests. Lamar v. Garner, 121 Texas 502, 50 S.W. 2d 769; State v. Magnolia Petroleum Co., 173 S.W. 2d 186; Shell Petroleum Corp v. Tippett, 103 S. W. 2d 448.

*Price Daniel,* Attorney General, *H. D. Pruett, Jr.* and *K. B. Watson,* Assistants Attorney General for Giles, Land Commissioner, *Graves, Dougherty& Greenhill,* for Brooks and McAlpine, respondents.

The deeds under which relators claim are void in so far as they purport to transfer the agency right created by the Relinquishment Act because they attempt to evade the act. Stradley v. Magnolia Petroleum Co. 155 S.W. 2d 649; Dunbar v. Texas Irr. Co., 195 S.W. 2d 614; Sheldon v. Robison, 117 Texas 537, 8 S.W. 2d 662.

MR. JUSTICE SHARP delivered the opinion of the Court.

This is an original mandamus proceeding, brought by Noble Holt joined by all others who have an interest in Section 16, Block 59, Public School Lands, situated in Reeves County, Texas, except Shelby Brooks and M. McAlphine who are made respondents, to compel the Honorable Bascom Giles, Commissioner of the General Land Office of Texas, to accept and file in the General Land Office in his official capacity, two certain oil and gas leases, described as follows:

An Oil and Gas Lease executed by M. L. Richards, as Agent of the State of Texas, to Noble Holt, covering an undivided three-fourths (3/4) interest in and to the North Half (N/2) of the North Half (N/2) of Section 16, Block 59, Public School Lands, Reeves County, Texas, and being One Hundred Twenty (120) acres, more or less, filed in the office of the Clerk of Reeves County, Texas, on June 25, 1950.

An Oil and Gas Lease executed by Shaw Oil Company, as Agent of the State of Texas, to Noble Holt, covering an undivided one-fourth (1/4) interest in and to the North Half (N/2) of the North Half (N/2) of Section 16, Block 59, Public School Lands in Reeves County, Texas, and an undivided one-fourth (1/4) interest in and to the South Half (S/2) of Section 16, Block 59, Public School Lands in Reeves County, Texas, filed in the office of the Clerk of Reeves County, Texas, on June 16, 1950, containing in all One Hundred Twenty (120) acres, more or less.

There is no controversy about the terms of the leases or the claims of the relators, and both leases were tendered to the Honorable Bascom Giles, Commissioner of the General Land Office, for filing on July 5, 1950. He refused to file the leases. Copies of the leases are attached to relators' petition, and marked "Exhibit 1" and "Exhibit 2."

Section 16 was public school land, and was awarded to Shelby Brooks on April 30, 1926, with a mineral classification. The land was patented to him July 28, 1939. Brooks executed two deeds, purporting to convey his interest in the North Half (N/2) of the North Half (N/2) of Section 16, with a reservation to himself "for the period of ninety-nine (99) years from the date hereof of the exclusive right of the use of said land for grazing and farming purposes." Brooks also executed two deeds purporting to convey undivided interests totaling three-fourths (3/4) in the South Half (S/2) of Section 16. Each of

these contains the reservation above quoted. M. L. Richards and Shaw Oil Company hold title to the land described in the deeds executed by Brooks. In addition, Brooks has conveyed by a quitclaim deed one-half of all of his interest in Section 16 to M. McAlpine.

One of the two leases in question is a lease executed by M. L. Richards, acting as the agent of the State, dated June 12, 1950, to Noble Holt, covering an undivided three-fourths interest in the North Half (N/2) of the North Half (N/2) of Section 16. The other is a lease dated June 13, 1950, executed by the Shaw Oil Company, as agent of the State, to Noble Holt, covering an undivided one-fourth interest in the North Half (N/2) of the North Half (N/2) of Section 16, and an undivided one-fourth interest in and to the South Half (S/2) of Section 16. Both of the leases contain the terms found in Form No. 5367, prepared by the General Land Office for use by the agents of the State in executing mineral leases.

Relators maintain that they are "the owners of the soil or owners of the land" within the meaning of the Relinquishment Act, and as such they are the agents of the State in the execution of mineral leases. They also contend that the owner of an undivided interest in mineral classified public school land, sold by the State, is the agent of the State, and is authorized by law to execute oil and gas leases thereon, and may make such leases without the joinder of the owners of the remaining undivided interest; and that the grantee in a general warranty deed conveying public school land, which land is sold by the State with a reservation of all minerals to the State, and in which deed there is a reservation in favor of the grantor, for a period of 99 years, of the exclusive right to the use of such land for grazing and farming purposes, "is the owner of the soil" as that term is used in the Relinquishment Act.

On the other hand, the State contends that under the reservation contained in the deeds, Brooks and McAlpine are "the owners of the soil or owners of the land" within the meaning of the Relinquishment Act, or at least have such an interest in the land that they must join in a mineral lease before it can be filed. The State also contends that the purpose of the Relinquishment Act was to allow the owner in possession of the land compensation for acting as the agent of the State and for damages to the surface in drilling oil wells; and, furthermore, that a deed containing a reservation of a 99-year lease as quoted

above is an obvious attempt to circumvent the statute, and for that reason should not be allowed to prevail.

Section 16 was classified as grazing and mineral land, and was patented to Brooks with all minerals reserved to the State. Brooks sold the land involved by general warranty deeds, and it is under these deeds that relators claim. M. L. Richards and Shaw Oil Company hold the same title as grantee in the conveyances, and Noble Holt holds as lessee from M. L. Richards and Shaw Oil Company as agents of the State. The conveyances from Brooks are ordinary warranty deeds, except they include, among others, the following paragraphs:

"(a) Subject to the certain oil and gas leases on said land heretofore executed and delivered to the several lessees therein named.

"(b) Subject to the express reservation by the grantor herein, for the use and benefit of himself, his heirs and assigns for the period of ninety-nine (99) years from the date hereof, of the exclusive right of the use of said land for grazing and farming purposes; * * *."

Article 5367, 5368, and 5379 of the Relinquishment Act read as follows:

Art. 5367. "The State hereby constitutes the owner of the soil its agent for the purposes herein named, and in consideration therefor, relinquishes and vests in the owner of the soil an undivided fifteen-sixteenths of all oil and gas which has been undeveloped and the value of the same that may be upon and within the surveyed and unsurveyed public free school land and asylum lands and portions of such surveys sold with a mineral classification or mineral reservation, subject to the terms of this law. The remaining undivided portion of said oil and gas and its value is hereby reserved for the use of and benefit of the public school fund and the several asylum funds."

Art. 5368. "The owner of said land is hereby authorized to sell or lease to any person, firm or corporation the oil and gas that may be thereon or therein upon such terms and conditions as such owner may deem best, subject only to the provisions hereof, and he may have a second lien thereon to secure the payment of any sum due him. All leases and sales so made shall be assignable. No oil or gas rights shall be sold or leased hereunder for less than ten cents per acre per year plus royalty, and the lessee or purchaser shall in every case pay the State ten cents

per acre per year of sales and rentals; and in case of production shall pay the State the undivided one-sixteenth of the value of the oil and gas reserved herein, and like amounts to the owner of the soil."

Art. 5379. "The payment of the ten cents per acre and the obligation to pay the owner of the soil one-sixteenth of the production and the payment of same when produced and the acceptance of same by the owner, shall be in lieu of all damages to the soil."

A brief history of the legislation leading to the enactment of the Relinquishment Act now in force will be helpful in construing such Act. Provisions were first adopted in 1889 for the protection of the surface owner against damages to the surface resulting from development of the State's minerals. Acts 1889, 21st Legislature, Article 3492, R. C. S. 1895. In 1913 the 30th Legislature, Chapter 173, page 409, repealed the Act of 1889, and established a new procedure, whereby the lessee of mineral rights from the State could pay the "owner or lessee of the surface" a certain sum or could bring condemnation proceedings. In 1917 the Act was amended (Acts 1917, 35th Legislature, Chapter 83, page 158), and under the amendments payments were made to the "owner of the surface," and nothing was said about lessees of the surface. In 1919 the present Relinquishment Act was passed, and by it the "owner of the soil" or "owner of the land" was made the agent of the State. The present statute constitutes the owner of the soil the agent of the State to execute mineral leases, subject to the terms of the statute, and has been construed by this Court in several cases. Greene v. Robison, Land Commissioner, 117 Texas 516, 8 S. W. 2d 655; Empire Gas & Fuel Co. et al. v. The State of Texas, 121 Texas 138, 47 S. W. 2d 265; Lamar v. Garner, 121 Texas 502, 50 S. W. 2d 769; Wintermann v. McDonald, Land Commissioner, 129 Texas 275, 102 S. W. 2d 167, 104 S. W. 2d 4; Lewis v. Oates, 145 Texas 77, 195 S. W. 2d 123.

When this land was sold by the State all minerals were reserved by the State, and the owner of the land was constituted the agent of the State to execute mineral leases.

■ The main questions presented are: Who is the owner of the land with authority to act as the agent of the State in executing mineral leases, and can relators execute a valid mineral lease on their interest in the land? This Court, in Turner v. Cross, 83 Texas 218, 18 S. W. 578, 15 L. R. A. 262, in defining the owner

of land, said: "One who has the legal right or exclusive title to anything is said to be a 'proprietor.' Webst. In many instances, if not usually, the word is the synonym of the word 'owner.' Abb.; Bouv.; Webst. The 'owner' is said to be 'he who has dominion of a thing, real or personal, corporeal or incorporeal, which he has the right to enjoy and to do with as he pleases, even to spoil or destroy it, so far as the law permits, unless he be prevented by some agreement or covenant which restrains his right.' Bouv. 'One who owns; a rightful proprietor; one who has the legal or rightful title, whether he is the possessor or not. 'Webst." In Cox v. Robison, 105 Texas 426, 150 S. W. 1149, this Court construed the words "owner of the soil" contained in Section 7 of Article XIV of the Constitution, and said: "That the term 'owner' was used in connection with the phrase 'hereby releases' gives the entire phrase further significance. In its ordinary meaning an 'owner' is 'one who owns'; a rightful proprietor; one who has the legal or rightful title, whether he is the possessor or not. Webster's Dict.; Turner v. Cross and Eddy, 83 Texas 225."

Under the language contained in the deeds the grantor did not retain any title to the land conveyed or the unsold and unleased minerals, nor the right to damage or destroy the land so conveyed. The grantor and the grantees in the deeds had the right to contract for the leasing of the land for grazing and farming purposes. The language used in the reservation discloses that the grantor occupies the land as a tenant, and not as the owner of the land. This fact does not indicate an attempt to circumvent the Relinquishment Act.

■ No provision is found in the Relinquishment Act prohibiting the owner of an undivided interest from executing, as agent of the State, a mineral lease on his interest in the land. The owner of an undivided interest in the land is the "owner of the soil" for such interest. Paragraph 10 of the leases executed by relators is copied from the form prepared and furnished by the General Land Office, and reads as follows:

"If the owner of the soil owns a less interest in the above described land than the entire and undivided surface estate therein, then the royalties and rentals herein provided to be paid to owner of the soil shall be paid to him only in the proportion which his interest bears to the whole and undivided surface estate; provided further that should production be secured while an undivided interest only in the above described land is covered by lease, the royalty to be paid to the State shall

be at the royalty rate specified in paragraph Numbered One hereof of the interest covered by lease plus the value of the whole production allocable to the undivided interest not covered by lease, less reasonable development and production costs."

■ It is quite obvious that if the owner of an undivided interest in the land could not execute a mineral lease on his part as agent of the State, and no mineral lease could be executed on the land until the owners of the entire interest joined in the lease, then the declared policy of the State, as expressed in the Relinquishment Act would be seriously retarded. The purpose of the law is to constitute the "owner of the soil" the agent of the State to execute mineral leases and to promote the development of the minerals. It was not intended that a person who holds a lease on land for grazing and farming purposes, and who in other words is a tenant occupying the land, should share with the "owner of the soil" in his compensation for executing a mineral lease on the land, as agent of the State; nor that by refusing to execute a mineral lease he could prohibit the owner from executing a mineral lease as the agent of the State, and thus prevent the State from receiving the royalty provided for by the Relinquishment Act.

The Attorney General, in Opinion No. 0-975, dated July 18, 1939, addressed to the Honorable Bascom Giles, Commissioner of the General Land Office, in construing the Relinquishment Act, said:

"We feel no hesitation in construing such Act as authorizing and empowering each owner of an undivided interest in the surface of the land included in the Act to act as agent for the State in executing a lease upon that proportion of the minerals that the undivided owner's interest bears to the entire tract."

In that opinion the Attorney General further advised the Commissioner of the General Land Office in the following language:

"You are accordingly advised that you are authorized to file and accept an oil and gas lease executed under the Relinquishment Act by a surface owner who owns only an undivided interest."

The Legislature was dealing with the State's undeveloped minerals, and expressed its intention with respect to the owner of the land to act as agent of the State in executing a mineral lease. If relators are owners of the land, as that term is used in

the Relinquishment Act, then they are constituted agents of the State. If Brooks and McAlpine, the lessees, are not the owners of the land, and are tenants by virtue of the reservations in the deeds, they have no interest in the minerals, and, therefore, are not essential parties to the mineral leases on the land involved here.

This mandamus proceeding is brought by Noble Holt joined by others who have an interest in Section 16, Block 59, except Brooks and McAlpine, who are made respondents. After a careful consideration of the matter, we are of the opinion that the leases should be filed, and it is ordered that the writ of mandamus be issued as prayed for by relators.

Opinion delivered May 16, 1951.

MR. JUSTICE SMEDLEY, joined by Justices Garwood and Wilson, dissenting.

I am compelled to dissent from the opinion and judgment of the majority which, by the extraordinary writ of mandamus, command the respondent, Commissioner of the General Land Office, to accept and file oil and gas leases executed by relators, as professed agents of the State under the Relinquishment Act, when co-respondents Brooks and McAlpine who, under reservation, have for a period of ninety-nine years the exclusive right to use the land for grazing and farming purposes, are not parties to the leases and have in no way acquiesced in their execution.

The opinion of the majority rather summarily disposes of the Land Commissioner's contention that Brooks and McAlpine should have executed the leases, or at least should have joined in them, by classifying these owners of the reserved estate in the land as mere tenants, and by saying that tenants are not owners of the land or of the soil within the meaning of the Relinquishment Act. Such a decision ignores the primary purpose of the Act and one of the principal reasons for the decision upholding the Act as constitutional. Greene v. Robison, 117 Texas 516, 8 S. W. 2d 655.

In the beginning, it should be observed that the estate reserved for a period of ninety-nine years, being the exclusive right to use the land for grazing and farming purposes, is not a mere ordinary tenancy, but when reserved, as here, out of land sold by the State with reservation of the minerals and falling within the terms of the Relinquishment Act, is no mean estate, but is an estate not only of long duration but of importance, and

is by reason of its very nature an estate entitled to the protection and benefits conferred by the Relinquishment Act.

It is to be remembered that the Act, as construed by the Greene case and in later decisions, does not release or relinquish to the owner of the land or of the soil fifteen-sixteenth or any other interest in the oil and gas in the land. Title to the oil and gas and all other minerals remains in the State under the reservation made by the State in the original sale of the land. It follows that the deeds of the land executed by Brooks, with reservation of the exclusive right to use the land for grazing and farming purposes for ninety-nine years, conveyed to his grantees nothing, or certainly when practically considered nothing, except the reversion after the expiration of the ninety-nine years. After the execution of the deeds title to the oil and gas and other minerals remained in the State and the full and exclusive right to use and enjoy the land or the surface or the soil for the only purposes for which such land is generally and ordinarily used, that is, grazing and farming, remained for ninety-nine years in the grantor Brooks.

The opinion of the majority quotes from Turner v. Cross, 83 Texas 218, 18 S. W. 578, 15 L. R. A. 262, a definition of the words "proprietor" and "owner" and uses the quotations for authority that one who is a lessee of land is not an owner. The opinion says nothing of what was decided in Turner v. Cross and nothing of the reasons for the decision. Neither the decision nor the reasons lend any support to the majority opinion's disposition of the question here considered. In that case the statute under construction gave a right of action for damages for death caused by the negligence of the "proprietor" or "owner" of a railroad. The railroad was being operated by receivers. It was held that the receivers were neither "proprietors" nor "owners" because they were acting as officers of the court and were not in possession of the property "in their own rights", but in a fiduciary capacity. The opinion goes on to say that while absolute and exclusive right is not always necessary to ownership, possession held in a fiduciary capacity does not constitute ownership. The clear implication of the opinion is that one who is in possession of property in his own right is, or may be considered, the owner of the property. In the case before us the exclusive right to possess and use the land for grazing and farming belings for ninety-nine years, by virtue of the reservations in the deeds, to co-respondents Brooks and McAlpine, and this right of exclusive possession is in their own right and is not possession held in a fiduciary character. The reasoning of the

opinion in Turner v. Cross shows further that ownership of property may exist without absolute title.

The decision of the majority denies to co-respondents Brooks and McAlpine the benefits that the Relinquishment Act was intended to confer upon them and ignores and defeats one of the purposes of the Act, which not only is a primary purpose but, according to the construction given in the Greene case, had a part in saving the Act as constitutional.

The very first words of the Act, which are quoted and emphasized in the Greene case, are: "To promote the active co-operation of the owner of the soil." Section 1, Ch. 81, Acts 2nd Called Session, 36th Legislature, p. 249. The history of the legislation with respect to these lands and the unsatisfactory conditions that existed by reason of the prior legislation, which resulted in the compromise represented by the Relinquishment Act, are discussed at some length in the opinion in the Greene case. That discussion includes reference to the antagonisms and conflicts that had arisen out of the "dural or double ownership of the land, the surface estate and the mineral estate", and shows that one of the reasons, if not the principal reason, for the Relinquishment Act was to secure cooperation from the owner of the surface estate by affording him more adequate compensation for the invasion of his land and the interference with his use and enjoyment of the surface caused by exploration and development of the land for oil. As that compensation the Act provides for payments to the land owner of one-half (according to the construction given in the Greene case) of the bonus, royalty and rentals payable for and under the lease. Article 5379, Revised Civil Statutes.

Throughout the Act the words "owner of the land" and "owner of the soil" are used as meaning the same thing, and clearly they have reference to him who owns the surface estate as distinguished from the State which owns the mineral estate. And in the same way the opinion in the Greene case speaks of "owner of the land", "owner of the soil" and "owner of the surface estate". Such a use of these words is consistent with the reference generally made in the decisions and in the industry, where there has been a severance of the minerals, to two estates in the land, the surface estate and the mineral estate.

The Act itself and the opinion in the Greene case clearly show that the damages which the owner of the surface estate suffers and for which the Act gives him compensation arise from the

taking, in the exploration and development of the land for oil, of a great part of the surface, which deprives the owner of the surface estate of the use and value of a part at least of what he owns. Conversion of land into an oil field often may destroy the full value of what belongs to the owner of the surface estate unless some benefits accrue to him from the development of the land for oil.

Co-respondents Brooks and McAlpine have for ninety-nine years the exclusive right to use the land for farming and grazing. The use of the land or the surface for exploration and development of oil would damage them in a substantial way by interfering with their use, and it is for damages thus suffered that the Relinquishment Act, as construed, gives compensation consisting of one-half of the bonus, rentals and royalties under an oil lease of the land. And yet the opinion of the majority means that Brooks and McAlpine are not entitled to the compensation or any part of it. It is given to relators who have no real or substantial right of possession until the expiration of ninety-nine years and who will not be damaged by the oil lessee's use of the land. The opinion in its effect takes compensation from those who will be damaged and therefore are entitled to compensation and gives it to those who will not be damaged and are not entitled to compensation. The erroneous decision flows from a narrow interpretation of the word "owner" and from a failure to take into consideration one of the important purposes of the Act. The application for the writ of mandamus should be refused.

The ruling of the majority which compels the Commissioner of the General Land Office to approve and file an oil lease executed by the owner of an undivided interest in the land has not been discussed in this dissent. That question deserves very careful and serious consideration and it suggests many difficulties and complications. See "The Texas Relinquishment Act" by A.W. Walker, Jr., First Annual Institute on Oil and Gas Law, Southwestern Legal Foundation, pp. 245, 290-294.

Associate Justice Garwood and Wilson join in this dissent.

Opinion delivered May 16, 1951.

Rehearing overruled July 25, 1951.