Lynda Ruth Ballenger **GLASS** et vir, et al.,
Appellants,

v.

**SKELLY OIL COMPANY** et al., Appellees.

No. 6167.

Court of Civil Appeals of Texas,
El Paso.

May 26, 1971.

Rehearing Denied July 21, 1971.

Lynch, Chappell, Allday & Culp, Vann Culp, Jimmie D. Oglesby, Midland, for appellants.

Perkins & Kirwan, M. J. Kirwan, Jr., Midland, Crawford C. Martin, Atty. Gen., Houghton Brownlee, Jr., James H. Quick, Asst. Attys. Gen., Austin, Upton, Shannon, Porter & Johnson, Craig Porter, San Angelo, James R. Kerr, Fort Stockton, Stubbeman, McRae, Sealy, Laughlin & Browder, W. B. Browder, Jr., Midland, for appellees.

## OPINION

RAMSEY, Chief Justice.

Skelly Oil Company, Plaintiff Appellee, brought this action for declaratory judgment to determine the validity of oil and gas leases. The State of Texas intervened seeking validation of the leases. The Appellants, Lynda Ruth Ballenger Glass, et vir, and Barbara Sue Ballenger Squire, et vir, were Defendants, and filed a cross-action asserting the invalidity of the leases or, in the alternative, their right to participate in the proceeds from the leases. The trial Court upheld the validity of the leases and denied Appellant's cross-action, from which judgment, this appeal was perfected. We affirm.

The land involved is mineral classified land. It was owned one-half by A. D. Neal and one-half by Roxie Neal. The minerals are owned by the State of Texas, subject to the right of the owner of the surface to execute oil and gas leases as provided in the Relinquishment Act, Art. 5367, Vernon's Ann.Civ.St.

A. D. Neal died in 1950. His will, which was filed and probated, contained provisions concerning the land described as the "Alan H. Robertson Ranch", being the land in question, as follows:

(a) "I give my nephew, Ira Stanley Lethco, all of my interest in Section 20, Block 142, T. & St. L. Ry. Co. Survey, Pecos County, Texas, together with an undivided ⅙ interest in and to said Robertson Ranch, for and during his natural life, and upon his death, then to the children of his body that may survive him, in fee simple;

(b) "I give to my nephew, Nelson Lethco, a one-sixth (⅙) interest in and to said Robertson Ranch, exclusive of the aforesaid Section 20, Block 142 for and during his natural life, and upon his death, then to the children of his body that may survive him, in fee simple, but in the event of his death without leaving any child or children surviving him, then the remainder of his said one-sixth (⅙) interest shall pass to and vest in the children of Ira Stanley Lethco, in fee simple;

(c) "I give to my nephew, Jim Oliver Neal, an undivided one-sixth (⅙) interest in and to said Robertson Ranch, exclusive of the aforesaid Section 20, Block 142, for and during his natural life, and upon his death, then to the children of his body that may survive him, in fee simple, but in the event of his death without leaving a child or children surviving him, then the remainder of said one-sixth (⅙) interest shall pass to and vest in my niece, Dollie Ruth Neal Ballenger, for and during her life, and upon her death, then to the children of her body that may survive her, in fee simple;

(d) "I give to each of the foregoing life tenants, during the period of their life tenancies, the right and power to lease said lands for oil, gas, and mineral production, the primary term of any lease not to exceed ten (10) years in duration and so long thereafter as oil, gas or other minerals or either of them, are produced in paying quantities, and to lease said lands for grazing purposes for a term or terms not to exceed ten (10) years in duration. Each of said tenants shall collect, receive and retain as their own respective property all bonuses, delay rentals and royalties accruing from production and grazing rentals in proportion to the acreage so leased."

The will further provided that the life estates were devised on condition that if any attempt was made by any of the life tenants to alienate, mortgage or sell the life estate or if any lien was attempted to be affixed by a life tenant, then all rights

of the life tenant should immediately cease and the property vest in the successor in interest as provided in the will.

Jim Oliver Neal died without issue, and his interest vested in Dollie Ruth Neal Ballenger. On December 1, 1967, Roxie Neal, a feme sole, Dollie Ruth Neal Ballenger, a feme sole, Ira Stanley Lethco and Nelson Lethco executed two leases, acting individually and as agents of the State of Texas, as Lessors, to Skelly Oil Company, as Lessee, and received therefor, the sum of $192,000.00 and a like amount being paid to the State of Texas.

The trial Court filed its findings of fact and conclusions of law. Appellants in their points of error three, four, five and six, complain that the Court erred in the following respects:

(1) In concluding that the life tenants are the "owners of the soil" as provided in the Relinquishment Act without the joinder of the remaindermen;

(2) In concluding that the leases are valid as covering the full interest; and,

(3) In concluding that the life tenants should receive the full consideration; and,

(4) In concluding that the remaindermen be denied any relief in their cross-action.

The Appellants (complaining remaindermen), are the daughters of Dollie Ruth Neal Ballenger.

The parties entered into a stipulation regarding the facts above recited. In addition, it was stipulated that the two Appellants and one other child not appealing, are all of the children of Dollie Ruth Neal Ballenger. That Ira Stanley Lethco has three children and Nelson L. Lethco has three children.

Appellants urge that in view of the fact that the State is the owner of the minerals, the only rights that A. D. Neal ever had were those granted under the Relinquishment Act, and therefore:

(1) He was entitled only to that portion of the benefits from leases he made during his lifetime (Citing Empire Gas & Fuel Co. v. State, 121 Tex. 138, 47 S.W.2d 265 (1932); and,

(2) Since he had no power to alienate the right during his lifetime, he would logically have no power to exercise control by his will, and such provision of his will should be declared void.

Under these four points of error, three basic proportions are to be determined, namely:

(1) Whether or not the oil and gas leases are valid; and,

(2) If valid, do the leases cover only the life estate interests of the lessors; and,

(3) Whether or not the remaindermen are entitled to share in the proceeds of the bonuses, rentals, and royalties.

The Relinquishment Act, Art. 5367, provides that the owner of the soil shall be the agent for the State and Article 5368 authorizes the owner to lease for oil and gas. The purpose of the act was to "promote the active cooperation of the owner of the soil and to facilitate the development of its oil and gas resources." Greene v. Robison, 117 Tex. 516, 8 S.W.2d 655 (Sup.Ct.1928).

The Courts have applied a rather rigid and literal interpretation of the act and have thwarted various attempts to circumvent its provisions by contractual arrangements or otherwise. Lewis v. Oates, 145 Tex. 77, 195 S.W.2d 123 (1946); Holt v. Giles, 150 Tex. 351, 240 S.W.2d 991 (Sup. Ct.1951); and Ussery v. Hollebeke, Tex. Civ.App., 391 S.W.2d 497 (Ref. n. r. e.) The effect of these decisions is to constitute the owner of the soil the agent of the State and the recipient of the benefits, any

agreement or other contractual arrangement of the parties notwithstanding. In determining the validity of the lease, however, it has been held that less than full fee title would constitute one an "owner of the soil" sufficiently to satisfy the act. Humble Oil and Refining Co. v. Lloyd, et al, Tex.Civ.App., 108 S.W.2d 213 (Ref.), Sheldon v. Robison, 117 Tex. 537, 8 S.W. 2d 662 (Sup.Ct.1928), and Empire Gas and Fuel Company v. State, 47 S.W.2d 265. In the Humble case, one Vela had purchased mineral classified land from the State while married. The property was community. His wife died leaving two minor children. Vela executed a lease to Humble in 1925. In 1934, the interest of the minor children was purchased from them and the purchaser executed a lease to Lloyd who in turn filed suit in trespass to try title against Humble. The Court held that the surviving husband was empowered to execute the lease as owner of the soil by virtue of his ownership together with his authority to manage and control the community estate. Thus, the ownership of Vela is supplemented by substantive law which the Court held sufficient to authorize Vela as agent of the State to execute the lease.

■ In addition, it has been determined and so held by the Supreme Court in Holt v. Giles, supra, that the owner of an undivided interest may execute a lease without the joinder of the other interest owners. This is a logical conclusion, otherwise, the desired results of the Relinquishment Act could be seriously impaired. Ordinarily, the holder of a life estate in land will be impeachable for waste if he removes and appropriates oil and gas. Under the "open mine" or "open well" doctrine, however, such right in the life tenant may be conferred by the instrument creating the estate. Amarillo Oil Company v. McBride, Tex.Civ.App., 67 S.W.2d 1098 (Ref.). We therefore conclude that the leases in question should not be invalidated for lack of capacity of the life tenants to execute the instruments. Since this is the only question presented as to the validity of the leases, we accordingly hold that they are valid.

In dealing with the second proposition; that is, whether the leases are effective to lease the entire interests under the tracts, we must consider the interest ownership of the life tenants in relation to the remaindermen. Both derive their interests from a common source, that being the will of A. D. Neal. By stipulation, the parties agree that during the lifetime of A. D. Neal, he was the owner of the interest in question. He never owned any interest in the minerals. His authority to lease under the Relinquishment Act was a right incident to his ownership of the surface. Unquestionably his intention by his will was to clothe the life tenants with the incidents of ownership enumerated in the will, for and during their natural lives, with the fee simple title vesting in the children of the bodies of the life tenants.

■ There is readily apparent, a distinguishable difference between a life tenant and tenant for a term of years as was involved in Holt v. Giles, supra. A tenant for years exists under and is subservient to the fee owner. The life estate, however, is created by instrument or operation of law the same as the remainder. Yet, the life estate is independent of the estate in remainder. Nussbaum v. Nussbaum, 292 S. W. 189 (Com.App. Sec. A, 1927). Both estates here are created by the will of A. D. Neal, in such manner that the life estates coupled with the executory powers enumerated constitute the authority of the life tenant to execute the leases. Amarillo Oil Company v. McBride, supra. In addition, the ultimate fee owners, under the terms of the will, cannot be determined until the expiration of the life estates either by death or by violation of the conditions imposed upon it. The remainder estate could be extinguished by death prior to the termination of the life estate. To attempt to designate the ultimate fee owners at this

time would be speculative. Appellants urge, and quite persuasively, that A. D. Neal, not having owned any interest in the minerals during his lifetime, should not be permitted to devise or bequeath a right which he could not alienate even while living. The Relinquishment Act vests the surface owner with the right to lease, however, such right is incidental to the surface ownership. A. D. Neal, as owner of the surface, can by devise control the use and ultimate ownership of the land. The creator of a life estate may empower the life tenant to dispose of the corpus. The courts will construe such provisions to give the fullest effect to the testator's intentions. Edds v. Mitchell, 143 Tex. 307, 184 S.W.2d 823 (1945). We hold that as between the life tenants and remaindermen that the expressed intentions of the instrument creating the estates will control in determining the respective interests. Under the terms of the will, the intentions of the testator are clear and certain whereby the life tenants are entitled to receive all income from the property as their own. The interests of both the life tenants and the remaindermen exist by virtue of the will. Neither interest can rise higher than the instrument creating them. To diminish the benefits accruing to the life tenants would effectually change the terms of the will.

Appellants further contend as an alternative, that proceedings be filed under Article 2320c, V.A.C.S., for appointment of a receiver to execute the leases. Homesteads are expressly exempt. This would require litigation before any lease could be executed. If claim of homestead was asserted, and the claimant refused to execute a lease, then no lease could be executed affecting such land. This could not be a facilitating factor in the development of oil and gas, but would operate to the contrary.

For the reasons set forth, Appellants' points 3, 4, 5, and 6 are overruled. In so holding, it is not necessary to pass on the other points presented. The judgment of the trial Court is affirmed.