ESTATE OF MATTIE ROBERTS, DECEASED, RAY ROBERTS, INDEPENDENT EXECUTOR, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5712–70.   Filed October 19, 1972.

*Elwood Chuck*, for the petitioner.
*W. Read Smith*, for the respondent.

TANNENWALD, *Judge:* Respondent determined a deficiency of $45,828.99 in the estate tax of the Estate of Mattie Roberts. The only issue remaining for consideration relates to the includability and value of what will henceforth be referred to as "agency rights" allegedly owned by the decedent at the time of her death.

#### FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly.

Mattie Roberts (hereinafter referred to as the decedent) died testate on May 21, 1966, a resident of Alpine, Tex. Ray Roberts (hereinafter referred to as the petitioner) was appointed executor of her estate on

June 14, 1966, and duly qualified as such within the time and manner prescribed by law. He resided in Marfa, Tex., at the time the petition herein was filed. Petitioner timely filed a U.S. estate tax return with the district director of internal revenue, Austin, Tex.

At her death, decedent owned certain rights in land in Pecos County which she had acquired prior to 1927 from the State of Texas, more particularly described as "Sections 28, 97, and 112 in Block 3." In the initial conveyances, the State of Texas reserved and retained all of the oil, gas, and other minerals (sometimes referred to as the mineral estate) in, under, upon, and to be produced from said land. At the time of her death, decedent owned no right, title, or interest, or a privilege or a benefit in, to, or incidental to said mineral estate other than that created, established, and provided for under, by virtue of, and pursuant to the terms and provisions of the Texas Relinquishment Act (Tex. Rev. Civ. Stat. Ann. arts. 5367–5379 (1962)). Pursuant to the provisions of that Act, decedent had, prior to her death, and acting individually and for the State of Texas, entered into oil and gas leases with respect to the eastern half of section 28 (320 acres) and all of sections 97 (669.63 acres) and 112 (640 acres), which provided for bonus payments, delay rentals, and royalties. The original terms of said leases extended beyond the date of decedent's death and as long as oil and/or gas was produced, with provisions for earlier termination if drilling was not commenced by certain specified dates and the delay rentals were not paid. Decedent and the State of Texas shared equally in the bonus payments, delay rentals, and royalties, if any, in accordance with the provisions of the Relinquishment Act. No production of oil and gas under any of said leases had commenced at the time of decedent's death. All payments due under the leases, including delay rentals accrued under the terms thereof, had been fully paid prior to decedent's death and no moneys were owed thereunder at that time.

The mineral estate in the western half of section 28 (320 acres) had not been leased prior to her death.

The following amounts are subject to the Federal estate tax as the value of the indicated interests of decedent as of the date of death, exclusive of any values attributable to the so-called agency rights in connection with the mineral estate:

```
(1) Section 28:
    (a) Surface _____ $42, 200
    (b) Existing lease (eastern half) _____    320
(2) Section 97:
    (a) Surface _____  11, 622
    (b) Existing lease_____   1, 675
(3) Section 112:
    (a) Surface _____  20, 099
    (b) Existing lease_____   1, 600
```

ULTIMATE FINDINGS OF FACT

The value of decedent's ownership rights in the surface should be increased by amounts attributable to the unexercised so-called agency rights of decedent, as follows:

| Parcel | Per-acre valuation | Total |
|---|---|---|
| Section 28, western half | $2 | $640.00 |
| Section 28, eastern half | 4 | 1,280.00 |
| Section 97 | 5 | 3,448.15 |
| Section 112 | 3 | 1,920.00 |
| Total | | 7,288.15 |

OPINION

The basic issue presented herein is whether any value should be included in decedent's gross estate with respect to so-called agency rights in certain lands in Texas owned by decedent at the date of her death. Both parties have approached this issue in the context of considering whether such rights constitute a separate interest in property within the meaning of section 2033.[1] Accordingly, we turn, in the first instance, to a consideration of the case in that frame of reference.

Initially, we note that neither party disputes the proposition that determination of the property interest of the decedent rests upon State law, in this case, the law of Texas. *United States* v. *Mitchell*, 403 U.S. 190, 197 (1971). Under the Texas Relinquishment Act, the decedent, as "owner of the soil," was the agent of the State of Texas for the limited purpose of leasing the mineral estate. Tex. Rev. Civ. Stat. Ann. art. 5367 (1962); *Greene* v. *Robison*, 117 Tex. 516, 8 S.W. 2d 655 (1928). No title or interest in the mineral estate vests in the owner of the soil. *Greene* v. *Robison, supra.* The authority of such owner does not extend to the giving of a deed to the mineral estate, and any such deed is void. *Texas Co.* v. *State*, 154 Tex. 494, 281 S.W. 2d 83 (1955). The right to act as agent is inalienable except in conjunction with the transfer of the land itself. *Lemar* v. *Garner*, 121 Tex. 502, 50 S.W. 2d 769 (1932); see *Lewis* v. *Oates*, 145 Tex. 77, 195 S.W. 2d 123 (1946). Compare *Holt* v. *Giles*, 150 Tex. 351, 240 S.W. 2d 991 (1951). On the other hand, once a valid lease has been executed, the lessor can alienate all or part of his interest in the lease separately from his ownership of the surface. *Lemar* v. *Garner, supra.*

To be sure, decedent, by controlling the terms of disposition of the surface rights, could allocate which of the owners of those rights would be entitled to exercise the so-called agency rights. *Glass* v. *Skelly*

---

[1] All references, unless otherwise indicated, are to the Internal Revenue Code of 1954, as amended.

*Oil Co.*, 469 S.W. 2d 237 (Tex. Civ. App. 1971). Decedent also could have leased the *use* of the surface for certain purposes such as grazing and farming without divesting herself of the so-called agency rights because she would still be deemed to own the surface rights. *Holt* v. *Giles, supra.* And, in the event of condemnation, the so-called agency rights would be considered an element of value in determining the amount of the award. *State of Texas* v. *Figueroa*, 389 F. 2d 251 (C.A. 5, 1968); *Schooler* v. *State*, 175 S.W. 2d 664, 669 (Tex. Civ. App. 1943). But in none of these situations did the courts consider these attributes as interests separate and distinct from the ownership of the soil.

In view of the foregoing authorities,[2] we are satisfied that, except insofar as the mineral estate is separated from the surface rights by a lease, the so-called agency rights of decedent were not personal to her but remained an integral part of her ownership of the soil and had no separate identity as an interest in property. In this respect, such rights are no different than the right to interest of the holder of an interest-bearing note (cf. *McClennen* v. *Commissioner*, 131 F.2d 165, 169 (C.A. 1, 1942)) or the various rights of the owner of an insurance policy, e.g., to change the beneficiary or surrender or assign the policy (cf. *Central Hanover Bank & Trust Co., Executor*, 40 B.T.A. 268, 272 (1939)) or the right of the owner of land to unharvested crops (*W. S. Peebles Et Al., Administrators*, 5 B.T.A. 386, 389 (1926)). The fact that, by certain action or inaction, decedent could have controlled the ultimate disposition of those rights does not demand that they be treated as an interest in property includable in her gross estate under section 2033. Cf. *Helvering* v. *Safe Deposit Co.*, 316 U.S. 56 (1942); *Estate of Edward H. Wadewitz*, 39 T.C. 925 (1963), affd. 339 F.2d 980 (C.A. 7, 1964); *Central Hanover Bank & Trust Co., Executor, supra.*

But our inquiry is not ended. It is clear that the ownership of the surface with the so-called agency rights is more valuable than ownership without them. See *Norman* v. *Giles*, 148 Tex. 21, 219 S.W. 2d 678, 686 (1949); Walker, "The Texas Relinquishment Act," 1st Ann. Inst. on Oil and Gas Law 275–276 (1949). Concededly, the parties have framed the issue of valuation in terms of their contentions as to the separateness of those rights as an interest in property and have stipulated the fair market value of the surface. But the entire record and the briefs clearly reveal that the critical issue placed before us is what value, if any, should attach to those rights and that the above-mentioned stipulation was not intended to be interpreted as precluding us

---

[2] For a thorough analysis of the applicable Texas law, see Walker, "The Texas Relinquishment Act," 1st Ann. Inst. on Oil and Gas Law 245 *et seq.* (1949).

from making a determination that the fair market value of the surface was enhanced by such rights. Under these circumstances, and in view of the fact that the record contains all the necessary material, we consider ourselves free to make such a determination. Cf. *Moore* v. *Commissioner*, 202 F. 2d 45 (C.A. 5, 1953); *Millar Brainard*, 7 T.C. 1180, 1185 (1946).

As we see it, the so-called agency rights included the immediate right to lease the mineral estate in the western half of section 28 and the future right to enter into other leases with respect to the mineral estate in the eastern half of section 28 and all of sections 97 and 112 if and when the existing leases on these parcels expired. Admittedly, the valuation of these rights is difficult, but this element does not justify an abdication of our responsibility to arrive at an appropriate amount, where, as is the case herein, the estate tax is involved and there is only one point of time at which the valuation can be made. See *Burnet* v. *Logan*, 283 U.S. 404, 413 (1931); *Stephen H. Dorsey*, 49 T.C. 606, 635 (1968) (Simpson, *J.*, dissenting). As Judge Learned Hand stated in *Commissioner* v. *Maresi*, 156 F. 2d 929 (C.A. 2, 1946), a case involving the problem of valuing a claim for future payments due a testator's divorced wife:

We are dealing with speculation as to the future on a subject which at best admits of no accurate determination. * * * The one sure way to do injustice in such cases is to allow nothing whatever upon the excuse that we cannot tell how much to allow. [156 F. 2d at 931.]

See also *Bankers Trust Co.* v. *Higgins*, 136 F. 2d 477, 479 (C.A. 2, 1943) ("we should not demand certainty; better a fair guess than the one answer sure to be wrong"); *Helvering* v. *Safe Deposit Co.*, *supra* at 66 ("we recognize that a decision must necessarily be an approximation derived from the evaluation of elements not easily measured").

Our determination of values is set forth in our Findings of Fact. They have been made on the basis of the record as a whole,[3] our evaluation of the pertinent testimony in light of the degree of expertise and persuasiveness of the witnesses, and irrespective of whether the burden of proof should be considered as remaining with petitioner or as being shifted to respondent on the ground that treating the so-called agency rights as an increment of value of the surface is a new matter. Rule 32, Tax Court Rules of Practice. In so doing, we have considered a variety of factors, including, but not limited to, the existence of leases on

---

[3] In this connection, we have given little weight to the evidence that decedent's executor entered into leases respecting these parcels in 1968 as to sections 28 and 97 and no weight to the lease respecting section 112 which was not entered into until March 1971, almost 5 years after decedent's death. *Fitts' Estate* v. *Commissioner*, 237 F.2d 729. 731 (C.A. 8, 1956), affirming a Memorandum Opinion of this Court; *James Couzens*, 11 B.T.A. 1040, 1165 (1928); cf. sec. 20.2031–2(b), Estate Tax Regs.

some of these lands at the time of the decedent's death, the terms of these leases, and the probability of the existence of minerals in paying quantities on each parcel of land involved.

*Decision will be entered under Rule 50.*