**SHERMCO INDUSTRIES, INC. and Peter A. Sherman**

v.

**SECRETARY OF the UNITED STATES AIR FORCE.**

**No. CA3-77-1495-F.**

United States District Court,
N. D. Texas,
Dallas Division.

May 2, 1978.

C. Thomas Wesner, Jr., Wesner, Wylie & Pleasant, Dallas, Tex., for plaintiffs.

Kenneth J. Mighell, U. S. Atty. by Stafford Hutchinson, Asst. U. S. Atty., Dallas, Tex., for defendant.

ROBERT W. PORTER, District Judge.

This is a suit for release of documents under the Freedom of Information Act, 5 U.S.C. § 552(a)(4)(B) (the "FOIA") and the Privacy Act, 5 U.S.C. § 522a(g)(5) (the "PA"). Shermco Industries, Inc. ("Shermco") was a contractor overhauling defendant's airborne generators for the first two years of a five year contract. Defendant terminated this contract during the third year, and solicited offers by requests for proposals from a number of contractors, including Shermco. Defendant determined

on October 14, 1976, that Tayko Industries, Inc. ("Tayko") was the low acceptable offeror and Shermco filed a protest on October 22, 1976 with the Comptroller General of the General Accounting Office ("GAO") complaining of the proposed award to Tayko.

Shermco's protest alleges that: (1) the five year policy contract was wrongfully terminated by Defendant; (2) the contract was terminated because Defendant concluded that Plaintiffs lacked integrity, rather than the stated reason for the termination; (3) Tayko lacks capacity, credit and capability to perform the contract; and, (4) Tayko's offer was not the lowest bid. The GAO has deferred a ruling on the protest until this case has been resolved.

On January 11, 1978, Plaintiffs wrote to Ralph W. Munch, a contracting officer with the Department of the Air Force at McClellan Air Force Base in California. Plaintiffs requested information under ASPR2–408 (32 C.F.R. 2:41) on Tayko's original bids. That section provides that offerors not selected for a contract award are to be provided with "the government's evaluation [debriefing] of the significant factors contained in their proposals." Plaintiffs' *First Request* for Documents; ASPR2–508.5; 32 C.F.R. 3:74.[1] This *First Request* was denied (*First Response*) in a letter dated January 18, 1977 by Ralph Munch because "award of the requirement has not been made to date due to the filing of the protest prior to award, and any information relating to the prices of any offerors cannot be disclosed at this point in time" citing ASPR3–508.4(b) which provides for a debriefing *after* contract award.

On February 23, 1977, the Secretary of the Air Force (SAF) responded to Shermco's protest of the contract award to Tayko. (SAF *Response* sent to GAO). The last page of the *Response* indicated that ten documents were attached and therefore furnished to the GAO. These documents, however, were not sent to the Plaintiffs.

1. All the correspondence between the Plaintiffs and the Defendant are contained in stipulations filed in this case. Both of the letters sent to the Air Force on May 5, 1977 were signed by Peter Sherman in his capacity as president of Shermco Industries, Inc. and signed by Peter Sherman in his personal capacity.

On March 4, 1977, the Plaintiffs wrote to Lt. Col. Thurmond L. Johnson, U.S.A.F., in Washington, D.C., requesting discovery of the documents attached to the Defendant's *Response* filed with the GAO. *Second Request.* On March 14, 1977, Lt. Col. Johnson denied Plaintiffs' request because "(n)ormally, on protests before award against negotiated procurements, submission of documents identified in the protest file 'contents' would not serve our best interest." Johnson also stated that any further request for this information should be made to the contracting officer at McClellan Air Force Base in California. *Second Response.*

On May 5th, 1977, Plaintiffs made simultaneous requests under the FOIA and the PA for the documents attached to the Defendant's *Response* to the GAO and "all written instruments and tangible things in your possession or to which you have access within the Air Force which directly or indirectly relate to any quality problems aleged (sic) as the reason for your refusal to continue with the follow-on contract to Shermco Industries, Inc." One request was sent to Lt. Col. Thurmond L. Johnson (*Third Request*); the other request was sent to the contracting officer at McClellan Air Force Base in California (*Fourth Request*).

The Air Force replied to the *Third Request* on May 16, 1977. The letter stated that the FOIA and the PA requests had been incorrectly sent to Washington and that Defendant was rerouting Plaintiffs' request to McClellan Air Force Base in California. *Third Response.*

Headquarters, Air Force Logistics Command, Wright Patterson Air Force Base (Ohio) sent a letter to Plaintiffs dated May 20, 1977 stating that: (1) the information requested by Plaintiffs May 5th, 1977 was not entirely releasable; (2) Plaintiffs would be notified in another letter of the cost of obtaining the releasable documents; (3) the procedure for appealing this decision was to direct a request for reconsideration to the Secretary of the Air Force, Wright Patterson Air Force Base (Ohio) within 45 days from May 20, 1977. *Fourth Response.*

In response to either Plaintiffs' *Third Request*, or Plaintiffs' forwarded *Fourth Request*, or under terms of the letter from Wright Patterson indicating that Plaintiffs would receive a statement of the costs involved in obtaining the releasable portions of the requested documents, the Plaintiffs received a letter from the Air Force, McClellan Air Force Base (California) dated May 27, 1977 indicating that (1) a portion of the information requested by Plaintiffs was releasable; and (2) the cost for securing these documents was $382.22. This was Plaintiffs' first response from McClellan Air Force Base (California).[2]

Plaintiffs, in a letter dated June 3, 1977, requested a detailed list of the releasable and withheld documents, and an itemized bill for reproducing the releasable documents. *Fifth Request.* On June 14, 1977, McClellan Air Force Base provided Plaintiffs with a list of 24 releasable items and 7 withheld items. The letter also indicated the charges for reproducing the items. *Fifth Response.*

Plaintiffs requested copies of certain documents, enclosed a check for $47.60 to cover reproduction costs and one hour of search time, and objected to the withholding of the 7 items. This letter of June 20, 1977 suggested that the Plaintiffs would be satisfied

---

2. It is unclear from just reading the exchange of correspondence why Wright Patterson Air Force Base (Ohio) responded to Plaintiffs' FOIA request when both of the May 5, 1977 requests had been forwarded to McClellan Air Force Base (California). It would therefore be unclear to the Plaintiffs whether the letter from McClellan dated May 27, 1977 was a response to one of the FOIA requests or a follow-up letter to the response from Wright Patterson.

Defendant's second supplemental filing of documents clarifies this point. The FOIA request received on May 5, 1977 by McClellan was forwarded on May 14, 1977 to the Commander, Air Force Logistics Command, Wright Patterson Air Force Base (Ohio) to permit a determination as to the releasability of the requested documents and information. Thus, the response from Wright Patterson was a reply to Plaintiffs' *Third Request* sent to McClellan Air Force Base (California), and the subsequent cost data from McClellan was in fact a follow-up letter promised in the Air Force's May 20, 1977 letter from Wright Patterson Air Force Base.

if the Air Force deleted references to bid amounts in the withheld documents and forwarded the sterilized versions to the Plaintiffs. *Sixth Request.*

Defendant responded to Plaintiffs' *Sixth Request* on June 28, 1977, by stating that (1) the check for $47.60 was returned as insufficient; (2) a copy of Plaintiffs' letter was being forwarded to HQ. AFLC/DADF, the denial authority for processing any appeals. Plaintiffs filed this suit against the Secretary of the Air Force (SAF) on November 10, 1977 alleging that (1) Defendant improperly failed to produce the documents in its files relating to any quality control problems of Shermco Industries, Inc.; (2) Defendant charged excessive amounts for search time and reproduction of documents when the requested documents were sent to the GAO by Defendant attached to its *Response*; and (3) Defendant arbitrarily and capriciously denied Plaintiffs access to the documents attached to the Defendant's *Response* in the GAO proceedings which Plaintiffs needed in order to prepare an answer to the allegations in Defendant's *Response.*

Defendant has answered by raising several alleged bars to Plaintiffs' suit. Defendant contends: (1) the PA does not cover the Plaintiffs because Plaintiffs lack standing under that Act and there is no "system of records" maintained on Plaintiff Sherman; (2) Plaintiffs have not exhausted their administrative remedies; and (3) Defendants are justified in withholding the 7 documents because the documents fall within certain exceptions to the FOIA. I will consider each of these issues in turn.

## PRIVACY ACT COVERAGE

Defendant asserts that the Plaintiffs lack standing to sue in Federal Court because they are not "individuals" as defined in the Privacy Act, 5 U.S.C. § 552a(a)(2). The

SAF also contends that it does not maintain a "system of records" on either of the Plaintiffs, as that term is defined in the Privacy Act [5 U.S.C. § 552a(a)(5)] which Defendant contends is a prerequisite to relief under the Act. On these issues the FOIA is a tough act to follow.

An "individual" and only an "individual" may gain access under the Privacy Act to his record or to any information pertaining to him which is contained in a "system of records". 5 U.S.C. § 552a(d)(1). Plaintiffs are seeking release under this provision of the PA of 7 documents withheld by the Air Force.

The Privacy Act defines an "individual" as "a citizen of the United States or an alien lawfully admitted for permanent residence." 5 U.S.C. § 552a(a)(2). A Senate Report on the Privacy Act indicates that Congress, by using this definition, intended to distinguish between the "rights which are given to the citizen as an individual under this Act and the rights of proprietorships, businesses and corporations which are not intended to be covered by this Act." S.Rep. # 1183, 93 Cong., 2d Sess. 79 (1974); 4 U.S.Code Cong. and Admin.News, p. 6993 (1974).[3] A "proprietorship" is a business which is owned by a person who has either the legal right and exclusive title, or dominion, or the ownership of that business. Black's Law Dictionary 1384 (Rev. 4th Ed. 1968); *Holt v. Giles*, 150 Tex. 351, 240 S.W.2d 991, 993 (1951); *Louisville Planing Mill Co. v. Weir Sheet Iron Works*, 199 Ky. 361, 251 S.W. 176, 177 (1923).

The Office of Management and Budget clarifies the scope of the term "individual" as outlined in the Senate Report in its guidelines on the Privacy Act. The guidelines state that Congress's definition of "individual" also created a distinction between "individuals acting in a personal capacity

---

**3.** The Senate Report states:

"[t]he term 'individual' . . . is used instead of the term 'person' throughout the bill in order to distinguish between the rights which are given to the citizen as an individual under this Act and the rights of proprietorships, businesses and corporations which are not intended to be covered by this Act. . . . [t]his definition was also included to exempt

[from] the coverage of the bill intelligence files and data banks devoted solely to foreign nationals or maintained by the State Department, the Central Intelligence Agency and other agencies for the purpose of dealing with nonresident aliens and people in other countries." S.Rep.No.1183, 93 Cong., 2nd Sess. 79 (1974); 4 U.S.Code Cong. and Admin.News, p. 6993 (1974).

and individuals acting in an entrepreneurial capacity . . ." O.M.B. Guidelines, 40 F.Reg. 28591 (1975).[4]

█ A court must examine the character of a request for records under the Privacy Act to determine whether all or part of that request is made by an "individual" and, if made by an "individual", whether his request relates to entrepreneurial activities. A corporation is not an "individual" under this definition and lacks standing under the "access to records" provision of 5 U.S.C. § 552a(d). Plaintiff Shermco is a corporation and it is clear that Shermco lacks standing under the Privacy Act.

█ Plaintiff Sherman incorporated Shermco Industries, Inc. on April 1, 1974, and has been Shermco's president since that date. Plaintiff Sherman owns 700,000 of the 950,000 shares of stock that have been issued since Shermco's incorporation. Under these facts Plaintiff Sherman operates a "proprietorship" or a "business" and he would not have standing to request access to records under the Privacy Act when those requests are determined to be made in Plaintiff's Sherman's entrepreneurial capacity.

In analyzing the character of a PA request, a court must begin by analyzing its language to determine whether the request relates to an individual's entrepreneurial activities. In this case Plaintiff Sherman requested "all documents transmitted . . (to the GAO) . . . concerning protests before award of Shermco Industries, Inc. . . ." and all written instruments and tangible things relating to "any quality problems alleged as the reason for your (the SAF's) refusal to continue with the follow-on contract to Shermco Industries, Inc." *Third and Fourth Requests.* The language of the requests clearly indicates that Plaintiff Sherman is seeking information related to Shermco's protest before the GAO, and that the information is sought by Sherman in his entrepreneurial capacity to assist his company in securing a contract, not in Sherman's personal capacity. In this case the language of the request is so clear that it is not necessary to look at any other factors to determine the character of Plaintiff Sherman's request. Plaintiff Sherman, for the request made under the Privacy Act in this case, is not an "individual" under the Privacy Act, and therefore lacks standing to seek access to records under the act.[5]

## EXHAUSTION UNDER THE FOIA

██ In most cases a federal court may review the actions of a governmental agen-

4. The Office of Management and Budget, in its guidelines on the Privacy Act, comments as follows on the definition of "individual" in subsection (a)(2) of the FOIA:
 "The language . . . suggests that a distinction can be made between individuals acting in a personal capacity and individuals acting in an entrepreneurial capacity . . and that this definition (and, therefore the Act) was intended to embrace only the former, the distinction is, of course, crucial to the application of the Act since the Act, for the most part, addresses 'records' which are defined as * * * information about individuals [sub-section (a)(4)]." OMB Guidelines, 40 F.Reg. 28591 (1975).

5. Under the Privacy Act an "individual" may obtain access to 'records' from agencies that maintain a "system of records". 5 U.S.C. § 552a(d)(1). A "record" means "any item, collection, or grouping of information about an individual that is maintained by an agency." 5 U.S.C. § 552a(a)(4). A "system of records" means a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual. 5 U.S.C. § 552a(a)(5).

Congress intended that the term "record" encompass a broad array of information that could be maintained on "individuals" under various filing systems. "The reference to personal characteristics does not exclude a file that contains only names and is headed by a general label for a category of records." 4 U.S.Code Cong. and Admin.News, p. 6993 (1974).

An "individual" requesting documents under the PA must be informed in the agency's response to the request what identifying symbols, numbers, or other identifying particulars the agency used in determining the list of records that satisfy the "individuals" request under the PA. *This is necessary because an "individual"* may be entitled to have the agency search its files to locate records using identifying particulars that the agency did not consider or reject.

The SAF asserts that it maintains no "system of records" on the Plaintiff Peter Sherman but the Air Force did not inform the Plaintiff or the Court what identifying particulars it used to

cy only after the Plaintiff has exhausted all of his administrative appeals. *McKart v. U. S.*, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969). The reasons for applying the doctrine of exhaustion of administrative remedies include: (1) judicial review may be hindered by failure of the litigant to allow the agency to make a factual record or exercise its discretion; (2) courts may never have to intervene if the complainant party is required to pursue his administrative remedies; (3) the agency should be given the opportunity to correct its own errors; (4) ignoring administrative processes could weaken the effectiveness of the agency by encouraging people to ignore its procedures; (5) the agency possesses expertise in dealing with complicated and technical facts in certain areas of the law; and (6) resolution of the dispute may involve interpretation and application of agency regulations. *McKart, supra; First Savings & Loan Association of Bahamas, Ltd. v. SEC*, 358 F.2d 358 (5th Cir. 1956); *League of United Latin American Citizens v. Hampton*, 163 U.S.App.D.C. 283, 501 F.2d 843 (1974).

The FOIA provides that an agency shall determine whether it will comply with a request for records within ten days of receipt of the request. 5 U.S.C. § 552(a)(6)(A)(i). The Act also provides that the agency must determine whether to

release the requested documents within twenty days of receipt of an appeal. 5 U.S.C. § 552(a)(6)(A)(ii). If the agency fails to comply with these statutory deadlines, the requestor is deemed to have exhausted his administrative remedies and may seek relief on an expedited basis in the federal courts. 5 U.S.C. § 552(a)(6)(C); 5 U.S.C. § 552(a)(4)(D). The federal court may review the agency's determination in a trial de novo. 5 U.S.C. § 552(a)(4)(B).

The de novo review procedures established by the FOIA are in sharp contrast with the review procedures applied to most agency determinations. A federal court generally examines only the agency record in reviewing agency actions and generally utilizes a limited standard of review. *U. S. v. Consolidated Mines and Smelting Co.*, 455 F.2d 432 (9th Cir. 1971); *Port of New York Authority v. Federal Maritime Commission*, 429 F.2d 663 (5th Cir.), *cert. den'd*, 401 U.S. 909, 91 S.Ct. 867, 27 L.Ed.2d 806 (1970). The exhaustion doctrine contributes to the compilation of a complete (usually exhaustive) agency record.[6] This reason for applying the exhaustion doctrine does not apply to FOIA cases where the federal court can construct its own record, but the other reasons cited in *McKart* for requiring exhaustion do apply. A person requesting documents from an agency under the FOIA must exhaust his administrative remedies

search its files in arriving at that conclusion. As Plaintiff Sherman is not an "individual" under the PA for his request in this case, it is unnecessary for me to inquire from the Air Force what identifying particulars the Air Force used in determining that it did not maintain a "system of records" of Plaintiff Sherman.

If a court is in doubt about the character of a request under the PA from just examining the language of the request, then it should look at the record the agency believes satisfies the request to determine if each document relates primarily to an individual's personal or entrepreneurial capacity. When it reviews these records, the Court must be informed of the identifying particulars used by the agency to locate the records to be sure that the agency has not omitted any particulars whose use in locating files might generate additional records.

Defendant also argued that this court should consider the fact that because of Shermco's indictment and suspension by the Air Force in

a letter dated February 7, 1978, Shermco lacks standing to press a bid protest because it was no longer deemed to be an "interested party". *Matter of John Barnard Industries, Inc.*, B–189103, 23 June 1977, 77–1 C.P.D. ¶ 446. Plaintiffs have requested that the court take judicial notice that on March 9, 1978 the indictment involving Shermco Industries, Inc. was dismissed. The Court therefore does not need to consider what effect the indictment of Shermco Industries, Inc. would have on its FOIA and PA requests.

**6.** An extreme example is the extent of the agency record compiled over a 12 year period by the FDA in ruling on the labeling of peanut butter jars. One Washington lawyer commented: "Certainly, there is something suspicious about a 24,000 page hearing transcript and close to 75,000 pages of documents on a case involving peanut butter." Time, April 10, 1978, p. 58.

before pursuing his request in the federal court. *Jaffess v. HEW*, 393 F.Supp. 626 (S.D.N.Y.1976); *Television Wisconsin v. NLRB*, 410 F.Supp. 999 (W.D.Wis.1976); *Morpurgo v. Board of Higher Education*, 423 F.Supp. 704 (S.D.N.Y.1976).

▮ A federal court must make three factual inquiries in determining whether an individual requesting documents is required in an FOIA suit to exhaust or has exhausted his administrative remedies: (1) did the agency make a determination of the request within the time limits specified by the statute [5 U.S.C. § 552(a)(6)(A)(i) and (ii)]; (2) if a proper, timely, and complete determination occurred, did the Plaintiff appeal that determination; and, (3) if the plaintiff did not appeal, do any exceptions to the exhaustion doctrine excuse the plaintiff from exhausting his administrative remedies through an appeal.

## DETERMINATION

▮ The agency is required by statute to make a determination on any FOIA request within 10 days of receipt of that request, 5 U.S.C. § 552(a)(6)(A)(i) and make a determination upon appeal within 20 days after the receipt of the appeal. 5 U.S.C. § 552(a)(6)(A)(ii). A "determination" response sent to a person requesting information under the FOIA must include at least four elements: (1) a statement of what the agency will release and will not release, including a list of the documents that are releasable and withheld; (2) a statement of the reasons for not releasing the withheld records; (3) a statement notifying the requesting person of his right to appeal to the head of the agency or seek judicial review of any adverse determination; and (4) if a fee is charged for releasing documents, a statement of why the agency believes that waiver or reduction of the fee is not in the public interest and does not benefit the general public, and a statement for the charges for document search and duplication of the releasable documents.[7] If the agency does not supply this information within ten days of receipt of an FOIA request or within twenty days of receipt of an FOIA appeal, the requesting person will be deemed to have exhausted his administrative remedies under the FOIA.

▮ The burden of producing evidence and the burden of proof is on the agency to establish compliance with the FOIA time limitations and determination requirements. *Seafarers International Union AFL–CIO v. Baldovin*, 508 F.2d 125 (5th Cir. 1975), vacated on other grounds, 511 F.2d 1161 (5th Cir. 1975); *Washington Research Project Inc. v. HEW*, 164 U.S.App. 169, 504 F.2d 238, *cert den'd*, 421 U.S. 963, 95 S.Ct. 1951, 44 L.Ed.2d 450 (1974).[8]

7. An agency should be allowed the opportunity to correct its own mistakes before a person resorts to the courts. *McKart v. U. S.*, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969). It would be impossible for a requesting person to effectively appeal an agency decision through the administrative process with any hope of changing the agency's mind if the person were denied access to adequate information about the adverse decision. A person cannot effectively appeal a decision about the releasability of documents or the charging of fees if he is not informed of at least a list of the documents to which he was denied access, what fees he will be charged for releasable documents, and why those decisions were made. Denial of this information would in all likelihood be a violation of due process as well as effectively gutting the reasons for applying the exhaustion doctrine in FOIA cases. U.S.Const. Amendment 14.

8. These cases place the burden of proof on the agency to establish that certain exemptions un-

der the FOIA apply to withheld records, but I believe that by analogy they place the burden on the agency to establish that it has made a determination if the agency is claiming that the requesting person has failed to exhaust his administrative remedies. If the agency invokes the exhaustion requirement, I believe it should have to show that it has complied with its responsibilities under that doctrine.

The 1974 amendments to the Freedom of Information Act were enacted to enable more efficient, prompt, and full disclosure of information by federal agencies. 3 U.S.Code Cong. and Admin.News, p. 6297 (1974). Placing strict requirements on appeal of agency decisions might thwart the Congressional purpose of easy access to government information. Therefore, I have placed the burden of producing evidence of an appeal on the requesting person, but once the Plaintiff has produced evidence of an appeal, the burden of proof rests with the government to show that an appeal of an agency decision was not valid.

## APPEAL

 In contrast to the specific statutory guidance in the FOIA regarding determinations by an agency, the FOIA is silent on the requirements for an appeal. An appeal at a minimum should: (1) be directed to the head of the agency specified in the "determination" letter sent within ten days after a person's FOIA request; (2) provide enough information so that the agency can easily determine what decision is being appealed and; (3) state the ground of appeal. The burden of producing evidence of a proper appeal is on the person requesting documents under the FOIA. If the person requesting documents satisfies this burden the agency has the burden of proof to establish that the appeal was not valid.

## EXCEPTIONS TO EXHAUSTION

 The usual exceptions to the exhaustion doctrine, for example, futility of exhaustion, apply in FOIA cases as well as other applicable judicial or statutory exceptions to the doctrine. The burden of producing evidence of an exception is on the person requesting documents under the FOIA. If the person requesting documents satisfies this burden, the agency has the burden of proof to establish that the exception is inapplicable.

## EXHAUSTION DOCTRINE APPLIED IN THIS CASE

Plaintiffs simultaneously sent two identical requests for information (the *Third and Fourth Requests*) under the FOIA to the Air Force on May 5, 1977. On May 16, 1977 the Air Force replied to the *Third Request* by stating that it had been sent incorrectly to Washington, and the Air Force was re-routing the request to McClellan Air Force Base in California (where Plaintiffs had sent their *Fourth Request*). Inexplicably the Plaintiffs received a reply from Wright Patterson Air Force Base (Ohio) on May 20, 1977 informing Plaintiffs that part of the requested documents were releasable and notifying Plaintiffs of the appeal procedure.[9] The SAF contends that: (1) this letter was a determination by the agency on Plaintiffs' request; (2) it was sent to Plaintiffs within ten days of receipt of Plaintiffs' FOIA request, and (3) Plaintiffs failed to appeal under the procedure outlined in the letter and have thus failed to exhaust their administrative remedies.

 The SAF's letter to the Plaintiffs on May 20, 1977 does not meet the requirements of a "determination" under the FOIA. The letter does not include a list of the releasable and withheld documents, does not include a statement of the fees charged for the releasable documents, and does not include a statement of why the agency believes waiver or reduction of any fee charged is not in the public interest or does not benefit the general public. The Plaintiffs could not effectively appeal the May 20th, 1977 adverse decision on their FOIA request without this information. No other correspondence was sent by the SAF to the Plaintiffs until May 27, 1977, long after the ten day determination period had expired. Plaintiffs are not required to exhaust their administrative remedies when the SAF fails to provide them with a complete determination within ten days of receipt of their FOIA request. 5 U.S.C. § 552(a)(6)(A)(i); *See* discussion of "Determination", *supra*.[10]

---

9. See Fn. 2.

10. The original FOIA request by the Plaintiffs was received by McClellan Air Force Base on May 5, 1977 at 8:20 p. m. It was received by the FOIA processing authority (DADF) at McClellan Air Force Base on May 9, 1977 at 9:03 p. m. The DADF forwarded Plaintiffs' request on May 13, 1977 to the Commander, Air Force Logistics Command at Wright Patterson Air Force Base (Ohio) to permit a determination as to the releasability of the requested documents and information. On May 20, 1977, the Air Force responded to Plaintiffs' FOIA request.

Plaintiffs argue that even if the May 20, 1977 letter is a "determination" as required by the FOIA, the Air Force failed to respond to Plaintiffs' request within ten days of receipt. Plaintiffs note that the Defendants in an affidavit acknowledge the request was received at McClellan on May 5, 1977, yet a response was not mailed until May 20, 1977. Defendant responds that "received" under the statute means the time when the proper FOIA agency

Defendant also contends that Plaintiffs failed to appeal within forty-five days the Air Force's adverse decision of May 20, 1977 on Plaintiffs' FOIA/PA request. On June 20, 1977, Plaintiffs wrote to McClellan Air Force Base and indicated that they objected to the withholding of all the documents that the Air Force had decided not to release to Plaintiffs. *Sixth Request.* An official at McClellan Air Force Base, in a letter dated June 28, 1977, responded to Plaintiffs' June 20, 1977 letter and indicated that Plaintiffs' letter of June 20 was being forwarded by McClellan to HQ. AFLC/DADF because appeals of FOIA request had to be processed through HQ. AFLC/DADF. I have already held that the May 20th, 1977 letter did not meet the requirements of a "determination". Assuming, arguendo, that it did meet those requirements, Plaintiffs' letter of June 20 was written within 45 days after the May 20th, 1977 adverse decision letter from Wright Patterson Air Force (Ohio) and within that 45 day period it was apparently

forwarded by McClellan to HQ. AFLC/DADF, the proper appeal authority. Plaintiffs have filed an affidavit stating they never received any further communication from HQ. AFLC/DADF at Wright Patterson Air Force Base (Ohio) and their response to that appeal from HQ. AFLC/DADF is in the record.

I find that the Plaintiff has sustained its burden of producing evidence that it did appeal the May 20th, 1977 adverse decision and that the SAF has produced no explanation of why the appeal was not properly processed. The SAF has also failed to produce any evidence that would show that HQ. AFLC/DADF responded to that appeal within twenty days as provided by statute. Under these facts, and assuming that the May 20, 1977 letter constituted a "determination", Plaintiffs have exhausted their administrative remedies because they appealed the May 20, 1977 adverse letter and the SAF failed to rule on that appeal within twenty days of receipt of their appeal. 5

processing authority receives an FOIA request. The SAF argues that Plaintiffs' request was incorrectly addressed to Ralph Munch, the contracting officer assigned to the Procurement Division at McClellan Air Force Base, rather than the FOIA processing authority at McClellan. Under this reasoning the SAF responded within ten days, because on May 9, 1977 the FOIA processing authority received Plaintiffs' request and (excluding weekends) within ten days of May 20, 1977, the Air Force responded to that request.

Defendant is in error. Though Plaintiffs misaddressed their FOIA request, PCO Munch is required by 32 CFR § 806.45 to notify the DADF of an FOIA request immediately. That section provides:

"(a) If an office received an improperly directed request for records, it must notify the proper DADF office immediately and ask for instructions on how to refer the request.
(b) All Air Force personnel must make every reasonable *effort to assist requestors* in directing requests for records to the proper authorities . . ." 32 CFR § 806.45

PCO Munch did not make "every reasonable effort" to assist the Plaintiffs in directing their request for records to the proper authorities and the four day delay in transmittal (within the same air base) deprived Plaintiffs of their right to a determination within ten days. The Defendant cannot use internal delay to absolve itself of its responsibilities under the FOIA.

The four day delay in redirecting this FOIA request to another part of McClellan Air Force Base is unreasonable, and the Defendant has not satisfied the statutory ten day response requirement. I also find that Defendant inexcusably delayed processing of this FOIA request by forwarding the request and a "proposed partial denial" from General Gavin, Commander, Sacramento Air Logistics Center, on May 13, 1977 to General Rhodes, Commander, Air Force Logistics Command under the provisions of 32 CFR 806.41(h). This procedure was unnecessary because that regulation provides that General Gavin is himself a qualified denial authority because he is a commander of a major command or a separate operating agency of the Air Force. 32 CFR § 806.-31(a)(2). That section provides:

"The authority to deny the disclosure of records to the public will not be delegated to a lower level than specified in ¶(a) of this section unless approved by SAF/AA. Such request will be provided to HQ. USAF/DA.
(a) Only the following officials or their designee have the authority to deny the release of records:
(1) Deputy chief of staff and chiefs of comparable offices or higher level at HQ USAF.
(2) Commanders of major commands or of separate operating agencies of the Air Force." 32 CFR § 806.31.

U.S.C. § 552(a)(6)(A)(ii); 5 U.S.C. § 552(a)(6)(C).[11]

## DOCUMENTS RELEASABLE

Plaintiffs requested two sets of records in their simultaneous May 5th, 1977 record requests under the FOIA and the PA (the *Third and Fourth Requests*): (1) all documents transmitted to the GAO attached to the Air Force's response to the Plaintiffs' GAO protest; and (2) all written instruments and other tangible things in the Air Force's possession which directly or indirectly related to any quality problems alleged as the reason for the Air Force's refusal to continue with Shermco's contract. The Air Force determined that 31 documents satisfied the Plaintiffs' request, 24 of these documents were releasable to the Plaintiffs upon payment of assessed search and duplication fees and 7 documents were not releasable.[12] Plaintiffs seek release of the 7 withheld documents and challenge the assessment of search and reproduction fees.

 The Air Force has withheld four of the disputed documents based upon Exemption 5, contained in 5 U.S.C. § 552(b)(5) of the FOIA which exempts from disclosure:

"Inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."

Exemption 5 does not apply to any document which falls within the meaning of the phrase "final opinion . . . made in the adjudication of cases." 5 U.S.C. § 552(a)(2)(A); *NLRB v. Sears Roebuck & Co.*, 421 U.S. 132, 148, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975). Three of these four documents are legal opinions discussing various legal issues raised in Shermco's protest before the GAO and the other document is the contracting officer's statement. The Air Force contends that each of these documents falls within the exception protecting the mental processes of an agency's decision makers from public scrutiny, citing *NLRB v. Sears, supra; Montrose Chemical Corp. v. Train*, 160 U.S.App.D.C. 270, 491 F.2d 63 (1974), and *Ackerley v. Ley*, 137 U.S.App.D.C. 133, 420 F.2d 1336 (1969). Plaintiffs contend that the decision to award the contract to Tayko was a "final opinion" by the agency, that the three memoranda and the contracting officer's statement are a part of that "final opinion", and that Exemption 5 would therefore not apply to these documents under the reasoning of *NLRB v. Sears, supra*, 151–152, 95 S.Ct. 1504.

Plaintiff Shermco sought award of an overhauling contract under the "procurement by negotiation" provisions of the Armed Forces Procurement Regulations. On October 14, 1976, Shermco received pre-award notification that its offer was unacceptable, and that Tayko would receive the contract. Shermco appealed this decision to the GAO. ASPR 3–508.1, 3–508.5; 32

---

11. Defendants attached an affidavit of Thomas A. Willett, Captain, United States Air Force General Litigation Division, Office of the Judge Advocate General of the Department of the Air Force indicating that after diligent search, "no record or entry concerning an appeal by Shermco Industries Inc., Mr. Peter A. Sherman, or any representative thereof, of a partial denial of a request for information, dated 5 May, 1977, has been found to exist." Capt. Willett has offered no explanation of what happened to Plaintiffs' letter of June 20 which was forwarded by McClellan to HQ. AFLC/DADF. The Court is satisfied that the Plaintiffs' letter, which the court interprets and which apparently the Air Force interpreted, as an appeal, was forwarded to the proper authorities though apparently they did not receive it. I do not believe that the Plaintiffs should be denied access to this court because the Air Force, through inexplicable internal confusion, lost their appeal.

12. A list of the 24 releasable documents labeled "Attachment 1" and the 7 withheld documents labeled "Attachment 2" are attached to Exhibit "L" of one of the stipulations filed by the parties. The Air Force would release: (1) items 1 through 19 listed on Attachment 1 (which were sent to the GAO) upon the payment of duplication charges; and (2) items 20 through 24, which satisfied the Plaintiffs' request for documents related to quality control problems and were not sent to the GAO, upon the payment of search and duplication fees. If ordered by this court to release the 7 withheld documents (which were sent to the GAO), the Air Force would charge Plaintiffs a duplication cost. I have analyzed the reasonableness of the charges the Air Force intends to assess the Plaintiffs in another portion of this opinion.

C.F.R. 3:74, 3:76 (1976).[13] Defendant contends that under the procurement regulations the Air Force's decision to award the contract to Tayko was not a final award of the overhauling contract, and Shermco's protest to the GAO was a pre-award protest under the provisions of ASPR 2–407.8(b), 32 C.F.R. 2:40 (1976). The Air Force characterizes its decision to "award" the contract to Tayko as a proposed contract award, and not a "final opinion" by the agency to award the contract to Tayko, which would occur when the actual award of the contract is made and announced.

The district court must determine whether or not a decision is a "final opinion" as that term is used in the FOIA, 5 U.S.C. § 552(a)(2)(A), recognizing the general philosophy of full disclosure under the Act.[14] In this case the Air Force informed

13. The letter to the Plaintiff states that "negotiations are now concluded and a contract is being awarded on subject solicitation to: Tayko Industries, Inc. . . ." and stated that subsequent revisions of the proposal would not be considered because no further negotiations were contemplated. Plaintiff assumed that the contracts had been awarded to Tayko and appealed under the post award appeal provisions of the ASPR.

14. The purpose of the FOIA is to establish a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language. *NLRB v. Sears Roebuck & Co.*, 421 U.S. 132, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975). The exemptions to the FOIA are exclusive and must be narrowly interpreted, *Montrose Chemical Corp. v. Train*, 160 U.S.App.D.C. 270, 491 F.2d 63 (1974), and Congress sought to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Department of Air Force v. Rose*, 425 U.S. 352 at 361, 96 S.Ct. 1592 at 1599, 48 L.Ed.2d 1126 (1976), quoting *Rose v. Department of Air Force*, 495 F.2d 265 at 263 (2nd Cir. 1974); *See* S.Rep.No.81389 Cong., 1st Sess. at 3 (1965).

Recently the Government has finally recognized the letter and spirit of the FOIA. On May 5, 1977, Attorney General Griffin Bell issued a letter to the head of all federal departments and agencies concerning the FOIA stating:

"I am convinced that we should jointly seek to reduce these disputes through concerted action to impress upon all levels of the government the requirements, and the spirit of the Freedom of Information Act. The Government should not withhold documents unless it is important to the public interest to do so, even if there is some arguable legal basis for the withholding. In order to implement this view, the Justice Department will defend Freedom of Information Act suits only when disclosure is demonstrably harmful, even if the documents technically fall within exemptions in the Act." Congressional Record S7763 (May 17, 1977).

Senator Kennedy in a speech to the United States Senate stated:

"President Ford's veto of the FOIA amendment though overridden, sent a message to the Federal bureauracy which conflicted with that contained in the amendments themselves. Such agency footdragging, overuse of exemptions, and procedural slights of hand continue to mitigate full implementation of the Act.

President Carter has stated his personal commitment to more 'sunshine' on the Potomac, but until now we have seen little concrete action to back up that welcome rhetoric. Last week, however, Attorney General Griffin Bell made a bold move to reinvigorate the spirit and the letter of the Freedom of Information Act.

On May 5, the Attorney General wrote to the head of all federal departments and agencies conveying an important message loudly and clearly: 'the government should not withhold documents unless it is important to the public interest to do so even if there is some arguable legal basis for the withholding.' And then Attorney General Bell went one step further—he indicated that the department will defend FOIA suits 'only when disclosure is demonstrably harmful, even if the documents technically fall within the exemptions of the Act.'

This, Mr. President, reflects a significant change from the department's previous practice of blindly defending agency refusals to disclose information whenever a complaint was filed against the government. This "hired gun" attitude by Justice not only ran counter to the FOIA itself which contemplates a leadership role by the department to induce greater, not less, disclosure of information by agencies—but also led to the litigation of hundred of cases in federal court. The present FOIA docket has over 600 cases; and in probably half or more of these, the information could well be disclosed with no harm to any governmental or private interest. But, agencies have come to view litigation as simply one more procedural tool for extending the time period they have before turning over information, particularly if it is of an embarrassing nature. The readiness of justice to defend all comers has encouraged agencies to take this 'let them sue' approach to FOIA requesters." Congressional Record S7762 (May 17, 1977).

Shermco that Tayko would be receiving the overhauling contract and "awarded" the contract to Tayko.[15] While technically the award is a "proposed award" to Tayko until the GAO makes its decision on Shermco's appeal, for purposes of the FOIA the decision is final. The FOIA does not require an "award" as that term is used by the Air Force or the ASPR in order for a decision to be final. A "final opinion" by any other name is still final.

■ If the decision to award the contract to Tayko is a "final opinion", then that decision is available for public inspection and copying. 5 U.S.C. § 552(a)(2)(A). The written document that contains the Air Force decision is the contracting officer's statement of facts and findings, one of the seven withheld documents. I find that this statement is releasable to the Plaintiffs under the Freedom of Information Act.

■ Memoranda prepared in contemplation of litigation setting forth an attorney's theory of the case and his litigation strategy are clearly exempt under Exemption 5. *NLRB v. Sears, supra.* After reviewing the three judge advocate's opinions in camera [16] I find that these documents are legal opinions prepared to assist the contracting officer in making his decision awarding the overhauling contract, and would normally not be releasable under the FOIA. *Montrose Chemical Corp. v. Train,* 160 U.S.App.D.C. 270, 491 F.2d 63 (1974).

■ These three documents were also sent to the GAO in support of the Air Force's response to Shermco's protest.[17] Communications made after a decision by an agency designed to explain that decision are releasable under the FOIA. *NLRB v.*

*Sears, supra,* 421 U.S. 151–152, 95 S.Ct. 1504. Where an intra-agency memorandum is referred to as part of the basis for the decision, that memorandum is releasable under the FOIA. *Montrose Chemical Corp. v. Train,* 160 U.S.App.D.C. 270, 491 F.2d 63 (1974); *American Mail Line v. Gulick,* 133 U.S.App.D.C. 382, 389, 411 F.2d 696, 703 (1969); *Sterling Drug v. FTC,* 146 U.S.App. D.C. 237, 450 F.2d 698 (1971).

■ The SAF argues that these legal documents were prepared for review by supervisory personnel, with an expectation of confidentiality, and are merely internal staff opinions which do not purport to explain the agency's decision to award the contract to Tayko.

One agency's memoranda are not "internal" or cloaked with an aura of "confidentiality" when they are released to another federal agency to support on appeal a "final opinion" by the releasing agency. In this case the legal memoranda were exempt under Exemption 5 until they were sent to the GAO. In sending these documents to the GAO the Air Force made them part of the basis of its decision to award the contract to Tayko (a "final opinion" under the FOIA) and the Air Force waived its exemption. They were designed to explain the Air Force's decision to the GAO and bolster the Air Force's position. The documents became more than "mere" staff opinions submitted to an Air Force official for internal decision making—they became the Air Force's official position and part of the "final opinion". I find that the three legal memoranda are releasable under the FOIA as they are part of the agency's "final opinion". 5 U.S.C. § 552(a)(2)(A).[18]

15. See Fn. 13.

16. Under both the FOIA and the PA, the Court may examine disputed documents in camera. 5 U.S.C. § 552(a)(4)(B); 5 U.S.C. § 552a(g)(3)(A).

17. Plaintiffs have suggested that they have been denied due process before the GAO because the Air Force has supplied to the GAO all the documents attached to the Air Force's response to the Plaintiffs' protest but have not supplied those documents to the Plaintiffs.

Plaintiffs may well have a valid constitutional claim on this point, but they have only alleged an FOIA and PA complaint. The Court also notes that the GAO was not made a party to this proceeding.

18. The Defendant has not made any argument that the contracting officer's statement nor the three legal opinions are exempt from release under the Privacy Act and after a thorough review of the Privacy Act, its exceptions, and the cases interpreting those exceptions, I can find no reason for withholding these documents

The other withheld documents are cost proposals submitted by competing contractors, including the low offerors proposals, the abstracts of proposals and the bid evaluations. Exemptions 3 and 4 to the FOIA permit an agency to withhold information specifically exempted from disclosure by statute or trade secrets and commercial information or financial information obtained from a person and privileged or confidential. 5 U.S.C. § 552(b)(3) and (4).

If an agency can show that disclosure of information would violate a particular federal statute, the information is exempt under the FOIA. 5 U.S.C. § 552(b)(3). The statute that requires the withholding of the information must leave no discretion on the issue and must establish particular criteria for withholding the information (or refer to particular types of information that must be withheld from disclosure). 5 U.S.C. § 552(b)(3). The Air Force argues that cost proposals of competing contractors must be withheld from public disclosure under 18 U.S.C. § 1905, and therefore Exemption 3 to the FOIA prohibits release of that information to the public.

The statute referred to by the Air Force prohibits under criminal penalty the disclosure by any federal employee of confidential trade secrets, processes, operations, style of work, or apparatus, or, the identity, confidential statistical data, amount or source of any income, profits, losses or expenditures of any person, firm, partnership, corporation or association not authorized by law. At least one court has held that Exemption 3 to the FOIA can prohibit disclosure of information specifically listed in 18 U.S.C. § 1905, *Westinghouse Electric Corporation v. Schlesinger*, 542 F.2d 1190 (4th Cir. 1976); if the information an agency seeks to withhold from public disclosure is not specifically mentioned in 18 U.S.C. § 1905,

then that statute cannot exempt the information from release under the terms of Exemption 3 to the FOIA. 5 U.S.C. § 552(b)(3).[19]

Cost proposals submitted to an agency to secure award of a procurement contract are not covered within the categories of information listed in 18 U.S.C. § 1905. The statute does not exempt from disclosure all confidential information, only those types of confidential information specifically mentioned. The Armed Services Procurement Regulations 3–507.1 do specifically prohibit the disclosure of price proposals prior to award. Exemption 3 of the FOIA permits withholding of information that is specifically exempted by statute, and the ASPR, while administrative regulations, are not statutes.[20]

Exemption 4 exempts trade secrets and commercial or financial information which is privileged or confidential. 5 U.S.C. § 552(b)(4). This exemption does not extend to all information given to the government in confidence. *Getman v. NLRB*, 146 U.S.App.D.C. 209, 450 F.2d 670 (1971). The section is designed to prevent unwarranted invasions of personal privacy which might be caused by the government's indiscriminate release of confidential information. *Grumman Aircraft Engineering Corp. v. Renegotiation Board*, 138 U.S.App. D.C. 147, 425 F.2d 578 (1970), *on remand*, 325 F.Supp. 1146 (D.C.D.C.1971). It is intended to encourage individuals to provide confidential information to the government, and it must be read narrowly in accordance with that purpose. *Soucie v. David*, 145 U.S.App.D.C. 144, 448 F.2d 1067 (1971).

Congress has granted the federal court the power to make a de novo review of an agency's decision to withhold informa-

under the Privacy Act. I have held, however, that the Plaintiffs have no standing under that Act. See U.S.C. § 552a(q).

19. I have assumed, without holding, that the categories of information specifically mentioned in 18 U.S.C. § 1905 are specific enough for the FOIA.

20. If 18 U.S.C. § 1905 does prohibit disclosure of contract price information, as the Air Force suggests, then the Air Force may violate this criminal statute when it provides in the Armed Services Procurement Regulations that contract price proposals may be disclosed after award of the contract.

tion under the FOIA and has permitted the court to inspect challenged documents in camera to determine whether the information is privileged. The federal district court must ultimately determine whether or not a claimed exemption under the FOIA (or the PA) has been validly claimed by an agency.

The Air Force contends that cost proposals are submitted to the government with the understanding that they will remain confidential prior to the award of the contract. Defendant argues that contractors would be substantially harmed if their competitors could discover their price proposals prior to award of a contract, and while the prospect of continued negotiation or resolicitations remains.

■ I will concede, without holding, that prior to "award" of the contract, contractors' cost proposals may be exempt under the FOIA under Exemption 4.[21] I find, contrary to the Air Force's argument, that for purposes of the FOIA and the rationale under Exemption 4 for withholding information from public disclosure, that the Air Force has "awarded" the contract in this case to Tayko. In making this finding I am aware that the Armed Services Procurement Regulations attempt to draw a technical distinction between a pre-award situation and a post-award situation. ASPR 3–508; 32 C.F.R. 3:74 (1976). Although the Air Force has selected Tayko to perform the overhauling contract, the Defendant labels this decision as "prior to award", arguing that until the GAO can decide Shermco's protest, there can be no "awarding" of the contract.

■ Until an agency selects a successful bidder to perform a service or supply goods, cost proposals (including low offeror's proposals, abstracts of proposals and bid evaluations) may be exempt from disclosure under Exemption 4 of the FOIA. Once the agency selects a bidder to perform the service or supply the goods, the cost proposals (including low offeror's proposals, abstracts of proposals and bid evaluation) are releasable under the FOIA, even though the agency's decision may be appealed to the GAO. Any need for secrecy is no longer present because the award will be made either to the successful bidder or to the protester before the GAO on the basis of the bids submitted to the agency and forwarded to the GAO. Neither the successful bidder nor the protester can gain any competitive edge if the information is released; the contract will be finally "awarded" on the basis of those cost proposals. The situation is factually indistinguishable from the moment the GAO "awards" the contract; at that time the ASPR provides that after "award" all the cost proposals are releasable to the competing contractors. If the GAO should decide to solicit new bids, the passage of time between the submission of the initial cost proposals and the GAO's decision to permit resolicitation would be such that new and different cost proposals would inevitably be submitted.

The Air Force argues that if the original proposals are released now, contractors would be substantially harmed. The Defendant has not submitted any factual information to support this statement, or to dispute the logical conclusion that the contractors would be no more harmed in that situation than contractors would be harmed if, hypothetically, after "awarding" an overhauling contract to a supplier, the government released all the competing cost proposals under the ASPR and then requested bids on another similar overhauling contract. I can find no reason to withhold these proposals under Exemption 4 of the FOIA after the agency has selected the successful bidder, and therefore the three cost proposal documents should be released to the Plaintiffs.[22]

21. The Air Force may lack standing to assert the confidentiality of cost proposals where the Air Force's argument is primarily that the contractors, not the Air Force, would be substantially harmed by the release of the cost proposal information.

22. The Defendant has not made any argument that the cost proposal documents are exempt from release under the Privacy Act, and after a thorough review of the Privacy Act, its exemptions, and the cases interpreting those exemptions, I can find no reason for withholding

## DOCUMENT RELEASE FEES

The FOIA and PA provide that agencies may charge uniform reasonable fees for reproduction of documents, 5 U.S.C. § 552(a)(4)(A) and 5 U.S.C. § 552a(f)(5), and the FOIA provides that the agency may make reasonable charges for any search in locating the requested documents. 5 U.S.C. § 552(a)(4)(A). The FOIA specifically provides that any fees incurred in locating or reproducing documents may be waived by the agency if the waiver of the fee is in the public interest because furnishing the information would primarily benefit the public. 5 U.S.C. § 552(a)(4)(A).

The Air Force has developed a schedule of fees for searching and duplicating under the FOIA. 32 C.F.R. § 806.21. Charges for reproduction are $2.00 for up to six reproduced pages, with an additional charge of five cents per page in excess of six pages. Id. The usual search fee charged by the Air Force is $6.50 per hour, with a minimum charge of $3.50. Id. On June 14, 1977, the Air Force informed Plaintiffs that they could obtain copies of the 24 releasable documents (19 of which were sent to the GAO) by sending payment of $330.00 for a search fee (the charge for 60 hours of search time at a cost of $5.50 per hour) plus reproduction costs of $2.00 for the first six pages and five cents per page for each additional document reproduced. Plaintiffs requested 14 documents, totaling 806 pages, and enclosed a check for $47.60 to cover the cost of reproduction and one hour of search time. The Air Force returned Plaintiffs' check, and refused to release any documents until the full $330.00 search fee was paid.

In their complaint, Plaintiffs objected to the excessive charge for search time when most of the documents were sent to the GAO with the Air Force's response to Plaintiffs' protest. On February 28, 1978, the Defendant filed an affidavit revising its calculated charges and attaching a copy of a letter to the Plaintiffs informing them of the revised fees.

 The affidavit states that no search fees were charged to Plaintiffs for locating 19 of the releasable documents sent to the GAO. Search fees in the amount of $330.00 for 60 hours of search time at $5.50 per hour were charged to locate documents 20 through 24 which were not sent to the GAO. Total reproduction costs for all 24 documents was 953 pages at $2.00 for the first six pages and five cents for each additional page or $49.35 and 287 pages that qualified as "off the shelf" at one cent per page or $2.87. A letter to the Plaintiffs stated that the search fee would only be assessed if Plaintiffs wished to secure copies of items 20 through 24, and the letter included reproduction costs broken down for certain combinations of documents requested by the Plaintiffs as well as reproduction costs of $11.45 for copying the releasable portions of the seven exempt documents.

Under the provisions of the FOIA I find that the proposed charges for search and reproduction costs of the releasable documents (or releasable portions of exempt documents) as set forth in the affidavit and letter to the Plaintiffs are reasonable.[23]

---

these documents under the Privacy Act if the Plaintiffs had standing under that Act.

See 5 U.S.C. § 552a(q).

**23.** The affidavit of Jack Horn, management analyst in the documentation branch of the McClellan Air Force Branch (California) indicates that the total search and reproduction charges for releasing documents 1 through 24 would be $382.22 for 1,240 pages. In the letter to the Plaintiffs dated February 17, 1978, however, Jack Horn indicated that documents 1 through 19 would be released on payment of reproduction costs of $26.20 and documents 20 through 24 would be released upon payments

of a search fee of $330.00 plus reproduction cost of $24.07. This makes a total charge of $380.27 for release of 1,245 pages. (The page computation was reached by adding the number of pages listed in an attachment to the letter of February 17, 1978 to the Plaintiffs for documents 1 through 24).

The Court is unclear how the cost figures used in the letter to the Plaintiffs were computed, and there is some discrepancy between the cost listed in the letter to the Plaintiffs and the affidavit of Jack Horn. The Court considers these discrepancies to be minor, and assumes that the Air Force will release the documents to the Plaintiffs under the cost figures stated in

## ATTORNEYS FEES

██ The FOIA and the PA provide that a person requesting documents under the Acts may recover reasonable attorneys fees and other litigation costs from the United States if, "the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E); 5 U.S.C. § 552a(g)(3)(B). The Court should utilize five criteria to determine whether attorneys fees should be awarded against the government: (1) the public benefit, (2) the financial wealth of the Plaintiff, (3) the complainant's interest in the records sought, (4) the reasonableness of the government's asserted legal basis for withholding the documents and (5) whether the requesting persons substantially prevailed in its claim. *Nationwide Building Maintenance Inc. v. Samson*, 182 U.S.App.D.C. 83, 91, 559 F.2d 704, 712 (1977); See S.Rep. # 93–854, 93 Cong., 2nd Sess., at 19 (1974). The court should evaluate the facts relevant to each of these considerations, and then balance all of the interests in exercising its discretionary fee award decision. *Nationwide, supra,* fn. 34.

Defendant argues that attorneys fees should not be awarded to the Plaintiffs in this case because the information they requested has little public benefit and the complainants have merely a private interest in the records. Plaintiffs do not dispute that the documents were sought primarily to assist the Plaintiffs' case before the GAO and not to benefit the public in general, that their interest in seeking the documents was primarily commercial, or that they are not indigent but a commercial enterprise and its major stockholder. Plaintiffs contend that they have completely prevailed in

the lawsuit and that the Air Force has asserted questionable exemptions in an attempt to deprive Plaintiffs of the right of access to these documents.

██ After reviewing the facts of the case and the legal contentions of both sides, I find that the Plaintiffs were pursuing primarily a private interest in seeking the release of the documents, the Plaintiffs were pursuing primarily a commercial interest in seeking release of the records, and the Plaintiffs are a corporation and an individual who do not merit special consideration by the court because of any asserted poor financial status. I also find that the Defendants asserted unreasonable exemption claims in withholding the contractor's statement of facts and the legal opinions sent to the GAO, unreasonably asserted the exhaustion doctrine under the FOIA, the Plaintiffs have almost completely prevailed on the merits, and these findings in favor of awarding the Plaintiffs attorney fees far outweigh any reasons for not awarding fees to the Plaintiffs. The Plaintiffs have sustained their burden in seeking award of attorneys' fees, and I award the Plaintiffs $4,500.00 in attorneys' fees under the FOIA representing 128.2 hours of services which is a reasonable fee considering the complexity of the case.[24] I also award to the Plaintiffs under the FOIA and the PA additional attorneys' fees of $4,000.00 if the case is appealed to the Fifth Circuit and an additional attorneys' fee of $3,000.00 if the case is appealed to the Supreme Court, and the Plaintiffs substantially prevail on appeal. Under the FOIA I award costs to the Plaintiffs.

either the affidavit or the letter to the Plaintiffs which are most favorable to the Plaintiffs.

Plaintiffs have suggested that they have been denied due process before the GAO because the Air Force has supplied to the GAO all the documents attached to the Air Force's Response to the Plaintiffs' protest at no cost but have agreed to supply those documents to the Plaintiffs only if they are paid for. Plaintiffs may well have a valid constitutional claim on this point, but they have only alleged an FOIA and PA complaint. The FOIA and PA have provisions permitting agencies to make reason-

able charges for duplication and search of documents and if the Plaintiffs seek release of documents under these Acts, the Plaintiffs must be willing to pay these reasonable charges.

24. I believe that the Plaintiffs have made an unusually reasonable request for compensation for their services. On an hourly basis they are requesting compensation of approximately $35.00 an hour, which I find to be below the average attorney's fee compensation rate currently awarded by this court.

The Secretary of the Air Force must release any of the 31 documents requested by the Plaintiffs within four days of receipt by the DADF, McClellan Air Force Base (California) of Plaintiffs' check covering the reasonable cost of reproduction (and search fees where applicable) of the documents the Plaintiffs desire.

It is so ORDERED.